**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Super 8 Worldwide, Inc., formerly known as Super 8 Motels, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SUPER 8 WORLDWIDE, INC., formerly known as SUPER 8 MOTELS, INC., a South Dakota Corporation, | : <br> : <br> : | |
| Plaintiff, | : | Civil Action No. 14- |
| v. | : | **VERIFIED** <br> **COMPLAINT** |
| DEEPAM, INC., an Alabama Corporation; JAGDISH PATEL, an individual; TEJASH PATEL, an individual; and MINA PATEL, an individual, | : <br> : <br> : | |
| Defendants. | : | |

Plaintiff Super 8 Worldwide, Inc., formerly known as Super 8 Motels, Inc., by its attorneys, LeClairRyan, complaining of defendants Deepam, Inc., Jagdish Patel, Tejash Patel and Mina Patel, says:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff Super 8 Worldwide, Inc., formerly known as Super 8 Motels, Inc., ("SWI") is a corporation organized and existing under the laws of the State of South Dakota, with its principal place of business in Parsippany, New Jersey.

2.    Defendant Deepam, Inc. ("Deepam"), on information and belief, is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business at 1013 W. Franklin Street, Quincy, Florida 82351.

3.      Defendant Jagdish Patel ("J. Patel"), on information and belief, is a principal of Deepam and a citizen of the State of Alabama, residing at 624 Decatur Highway, Fultondale, Alabama 35068.

4.      Defendant Tejash Patel ("T. Patel"), on information and belief, is a principal of Deepam and a citizen of the State of Alabama, residing at 624 Decatur Highway, Fultondale, Alabama 35068.

5.      Defendant Mina Patel ("M. Patel"), on information and belief, is a principal of Deepam and a citizen of the State of Alabama, residing at 624 Decatur Highway, Fultondale, Alabama 35068.

6.      The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Deepam by virtue of, among other things, section 17.4 of the June 30, 1999 franchise agreement by and between Deepam and SWI (the "Franchise Agreement"), described in more detail below, pursuant to which Deepam has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

9.      This Court has personal jurisdiction over J. Patel, T. Patel and M. Patel by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which J. Patel, T. Patel and M. Patel acknowledged that they were personally bound by section 17 of the Franchise Agreement.

10.     Venue is proper in this District pursuant to section 17.4 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Deepam of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Super 8® Marks

11.     SWI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

12.     SWI owns and has the exclusive right to license the use of the service mark SUPER 8 and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Super 8® Marks"), as well as the distinctive Super 8® System, which provides guest lodging services to the public under the Super 8® name and certain services to its franchisees, including a centralized reservation system, advertising, publicity, and training services.

13.     SWI or its predecessors first used the SUPER 8 MOTEL mark in 1973 the Super 8® Marks are in full force and effect.   Certain of the registered Super 8® Marks are incontestable pursuant to 15 U.S.C. § 1065.

14.     SWI has given notice to the public of the registration of the Super 8® Marks as provided in 15 U.S.C. § 1111.

15.     SWI uses or has used the Super 8® Marks as abbreviations of its brand name.

16.     Through its franchise system, SWI markets, promotes, and provides services to its guest lodging franchisees throughout the United States.   In order to identify the origin of their

3

guest lodging services, SWI allows its franchisees to utilize the Super 8® Marks and to promote the Super 8® brand name.

17.     SWI has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Super 8® Marks as distinctly designating SWI guest lodging services as originating with SWI.

18.     The value of the goodwill developed in the Super 8® Marks does not admit of precise monetary calculation, but because SWI is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of SWI's goodwill exceeds hundreds of millions of dollars.

19.     The Super 8® Marks are indisputably among the most famous in the United States.

## The Agreements Between The Parties

20.     On or about June 30, 1999, SWI entered into the Franchise Agreement with Deepam for the operation of a 126-room Super 8® guest lodging facility located at 624 Decatur Highway, Fultondale, Alabama 35068, designated as Site No. 08614-86021-04 (the "Facility"). A true copy of the Franchise Agreement is attached hereto as Exhibit A.

21.     Pursuant to section 5 of the Franchise Agreement, Deepam was obligated to operate a Super 8® guest lodging facility for a twenty-year term, during which time Deepam was permitted to use the Super 8® Marks in association with the operation and use of the Facility as part of SWI's franchise system.

22.     Pursuant to section 7 and Schedule C of the Franchise Agreement, Deepam was required to make certain periodic payments to SWI for royalties, service assessments, taxes,

interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

23.    Pursuant to section 7.3 of the Franchise Agreement, Deepam agreed that interest is payable "on any past due amount payable to [SWI] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

24.    Pursuant to section 3.9 of the Franchise Agreement, Deepam was required to prepare and submit monthly reports to SWI disclosing, among other things, the amount of gross room revenue earned by Deepam at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to SWI.

25.    Pursuant to section 3.9 of the Franchise Agreement, Deepam agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.9 and 4.8 of the Franchise Agreement, Deepam agreed to allow SWI to examine, audit, and make copies of the entries in these books, records, and accounts.

26.    Pursuant to section 11.2 of the Franchise Agreement, SWI could terminate the Franchise Agreement, with notice to Deepam, if Deepam (a) discontinued operating the Facility as a Super 8® guest lodging establishment and/or (b) lost possession or the right to possession of the Facility.

27.    Section 13 of the Franchise Agreement specified Deepam's obligations in the event of a termination of the Franchise Agreement, including its obligation to immediately cease using all of the Super 8® Marks.

28.     Pursuant to section 17.4 of the Franchise Agreement, Deepam agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

29.     By Amendment to the Franchise Agreement dated January 1, 2006 (the "Amendment"), SWI acknowledged a change of ownership in Deepam. A true copy of the Amendment is attached hereto as Exhibit B.

30.     Pursuant to the Amendment, J. Patel, T. Patel and M. Patel provided SWI with a Guaranty of Deepam's obligations under the Franchise Agreement.   A true copy of the Amendment's Guaranty is attached hereto as Exhibit C.

31.     Pursuant to the terms of the Guaranty, J. Patel, T. Patel and M. Patel agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Deepam] to perform, each unpaid or unperformed obligation of [Deepam] under the [Franchise] Agreement."

32.     Pursuant to the terms of the Guaranty, J. Patel, T. Patel and M. Patel agreed to pay the costs, including reasonable attorneys' fees, incurred by SWI in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

### The Termination of the Franchise Agreement

33.     By letter dated May 5, 2011, a true copy of which is attached hereto as Exhibit D, SWI acknowledged Deepam's request that the Facility be temporarily closed from May 3, 2011 through May 3, 2012, and reopen on May 4, 2012.

34.     On or about June 29, 2012, SWI inspected the Facility and determined that Deepam had not re-opened the Facility.

35.     By letter dated September 4, 2012, a true copy of which is attached as Exhibit E, SWI acknowledged Deepam's unilateral termination of the Franchise Agreement, effective June 29, 2012, and advised Deepam that (a) it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Super 8® System facility, and to discontinue the use of other materials on the premises effectively to distinguish the same from its former appearance as a Super 8® System facility, (b) all items bearing the Super 8® Marks had to be removed, (c) all signs and any listings in directories and similar guides in which the Facility was identified as a Super 8® had to be changed, (d) it had to de-identify the Facility within 10 days from the receipt of the notice, and (e) demand was made for all outstanding Recurring Fees through the date of termination.

36.     The termination of the Franchise Agreement precludes Deepam from any further use of the Super 8® Marks in or around the Facility.

37.     The termination of the Franchise Agreement precludes Deepam from any further use of the Super 8® Marks to induce the traveling public to use the Facility in any way.

38.     Since the termination of the Franchise Agreement, Deepam has continued to use the Super 8® Marks to induce the traveling public to rent guest rooms at the Facility.

39.     Since the termination of the Franchise Agreement, Deepam has used the Super 8® Marks without authorization to rent rooms through, among other things, failure to remove Super 8® signage and continuing to identify the Facility as a Super 8® guest lodging facility in response to telephone inquiries as to whether or not the Facility is a Super 8®.

40.     By letter dated October 2, 2014, a true copy of which is attached as Exhibit F, SWI reiterated Deepam's post-termination obligations under the Franchise Agreement, including

the requirement that, upon termination, Deepam completely "de-identify" the Facility as a Super 8®.

41.     Deepam has continued to misuse the Super 8® Marks despite receiving notification from SWI to cease and desist from the misuse of the Super 8® Marks.

## FIRST COUNT

42.     SWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 41 of the Verified Complaint.

43.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

44.     Deepam marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Super 8® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

45.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . . goods and/or services . . . shall be liable in a civil action . . . ."

46.     The acts of Deepam in marketing, promoting, and renting rooms at the Facility, through and with the Super 8® Marks, constitute:

> a)  a false designation of origin;
>
> b)  a false and misleading description of fact; and
>
> c)  a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Deepam's Facility with SWI, and to cause confusion, or to cause mistake, or deception, to the effect that SWI sponsors or approves of the guest lodging services that Deepam provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

47.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

48.     Deepam's use of the Super 8® Marks in connection with goods and services at the Facility, after the Super 8® Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Super 8® Marks, and lessened and will continue to lessen the capacity of the Super 8® Marks to identify and distinguish the goods and services of SWI, all in violation of Section 43(c) of the Lanham Act.

49.     Deepam's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

50. Deepam's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on SWI.

51. SWI has no adequate remedy at law.

52. No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

WHEREFORE, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), SWI demands judgment against Deepam:

a) Preliminarily and permanently restraining and enjoining Deepam, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Super 8® Marks; and

b) Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

53. SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Verified Complaint.

54. Pursuant to sections 3.9 and 4.8 of the Franchise Agreement, Deepam agreed to allow SWI to examine, audit, and make copies of Deepam's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

55. Deepam has engaged in acts and practices, as described, which amount to infringement of the Super 8® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

56.     As a result, Deepam owes restitution and the disgorgement of profits, in an amount unknown to SWI, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Deepam.

**WHEREFORE**, SWI demands judgment ordering that Deepam account to SWI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Super 8® Marks.

## THIRD COUNT

57.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 56 of the Verified Complaint.

58.     Pursuant to section 7 and Schedule C of the Franchise Agreement, Deepam was obligated to remit Recurring Fees to SWI.

59.     Despite its obligation to do so, Deepam failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $103,770.31.

60.     Deepam's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged SWI.

**WHEREFORE**, SWI demands judgment against Deepam for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $103,770.31, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

61.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 60 of the Verified Complaint.

11

62.     At the time of the termination of the Franchise Agreement, Deepam was obligated to pay SWI Recurring Fees.

63.     Despite its obligation to do so, Deepam failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $103,770.31.

64.     In addition, Deepam benefited from its wrongful use of the Super 8® Marks after termination of the Franchise Agreement and paid no royalty or other Recurring Fees to SWI in return for that benefit.

65.     Deepam's failure to compensate SWI constitutes unjust enrichment and has damaged SWI.

        **WHEREFORE**, SWI demands judgment against Deepam for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $103,770.31, together with interest, attorneys' fees, and costs of suit, and all royalties and other Recurring Fees that should be paid to compensate SWI for the period during which Deepam misused the Super 8® Marks and was thereby unjustly enriched, together with interest and costs of suit.

## FIFTH COUNT

66.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 65 of the Verified Complaint.

67.     Pursuant to the terms of the Guaranty, J. Patel, T. Patel and M. Patel agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of Deepam under the Franchise Agreement.

68.     Despite their obligation to do so, J. Patel, T. Patel and M. Patel have failed to make any payments or perform or cause Deepam to perform each obligation required under the Franchise Agreement.

69.     Pursuant to the Guaranty, J. Patel, T. Patel and M. Patel are liable to SWI for Deepam's Recurring Fees due and owing under the Franchise Agreement, in the current amount of $103,770.31, and for those additional Recurring Fees attributable to the period during which Deepam has misused the Super 8® Marks.

**WHEREFORE**, SWI demands judgment against J. Patel, T. Patel and M. Patel for damages in the amount of:

a)     All Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit; and

b)     All profits, royalties, and other Recurring Fees that should be paid to compensate SWI for the period during which Deepam misused the Super 8® Marks and was thereby unjustly enriched, together with interest, attorneys' fees and costs of suit.

## SIXTH COUNT

70.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 69 of the Verified Complaint.

71.     By letter dated June 29, 2012, SWI acknowledged Deepam's unilateral termination of the Franchise Agreement, effective June 29, 2012, for failing to re-open the Facility pursuant to the terms of the temporary closing.

72.     Section 13.2 of the Franchise Agreement provides that, when the Franchise Agreement is terminated, SWI has the right to "without prior notice enter the Facility, and any other parcels, . . . and paint over or remove and purchase for $10.00, all or part of any interior or

13

exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that [Deepam] [has] not removed or obliterated within five days after termination."

73.     Deepam continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Super 8® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers.

74.     Deepam's unauthorized use of the Super 8® Marks has inflicted and continues to inflict irreparable harm on SWI.

        **WHEREFORE**, SWI demands judgment declaring that SWI, or its authorized agent, has the right, without prior notice to Defendants, to enter the property at the Facility and remove any and all exterior signage, exterior items and other exterior materials displaying the Super 8® Marks.

                        **LeClairRyan**
                        Attorneys for Plaintiff,
                        Super 8 Worldwide, Inc.,
                        formerly known as Super 8 Motels, Inc.


                        By: _____
                            **BRYAN P. COUCH**

Dated:  10/13/14

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**LeClairRyan**
Attorneys for Plaintiff,
Super 8 Worldwide, Inc.,
Formerly known as Super 8 Motels, Inc.

By:_____
      **BRYAN P. COUCH**

Dated: 10/13/14

## **VERIFICATION**

STATE OF NEW JERSEY        )
                           ) ss:
COUNTY OF MORRIS           )


**SUZANNE FENIMORE**, of full age, being duly sworn according to law, upon her oath, deposes and says:

I am Senior Director of Contracts Compliance for Super 8 Worldwide, Inc., formerly known as Super 8 Motels, Inc., which is plaintiff in this action.

I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of SWI and/or information available through employees of SWI.


_____
**SUZANNE FENIMORE**


Sworn and subscribed to before
me this 6th day of October , 2014


_____
NOTARY PUBLIC

16

# **EXHIBIT A**

Location: Birmingham North, AL.
Entity No.     86021
Unit No.:      8164

# SUPER 8 MOTELS, INC.
## FRANCHISE AGREEMENT

THIS FRANCHISE AGREEMENT ("Agreement"), dated _June 30_ 19_99_, is between **SUPER 8 MOTELS, INC., a South Dakota corporation** ("we", "our" or "us"), and **Deepam, Inc., an Alabama corporation** ("you"). The definitions of capitalized terms are found in Appendix A. In consideration of the following mutual promises, the parties agree as follows:

This transaction involves the transfer of an existing Chain Facility at the Location first granted to Parks' Inn, LLC., an Alabama limited liability company ("Prior Franchisee") in a Franchise Agreement with us dated December 31, 1996 (the "Prior Agreement"). You assume and obligate yourself to perform any and all of the obligations (financial and otherwise) of the Prior Franchisee under the Prior Agreement that is not paid or performed as of the date of this Agreement, including without limitation, the obligation to pay any unpaid Royalties, System Assessment Fees or other amounts due us and to correct any uncured defaults other than as expressly superseded by this Agreement.

1.      **License.**  We have the exclusive right to license and franchise to you the distinctive "Super 8" System for providing economy lodging motel services. We grant to you and you accept the License, effective and commencing on the Opening Date and ending on the earliest to occur of the Term's expiration or a Termination. The License is effective only at the Location and may not be transferred or relocated. You will call the Facility a "Super 8 Motel" and you may adopt additional or secondary designations for the Facility with our prior written consent, which we may withhold, condition, or withdraw on written notice in our sole discretion.

2.      **Protected Territory.**  We will not own, operate, lease, manage, or license anyone but you to operate a Chain Facility of the same name (Super 8 Motel) in the "Protected Territory", defined in Appendix A, while this Agreement is in effect. We may own, operate, lease, manage, franchise or license anyone to operate any Chain Facility located anywhere outside the Protected Territory without any restriction or obligation to you. We may grant Protected Territories for other Chain Facilities that overlap your Protected Territory. While this Agreement is in effect, neither you nor your officers, directors, general partners or owners of 25% or more of your Equity Interests, may own, operate, lease, manage or franchise any guest lodging facility other than the Facility in the Protected Territory (other than the Facility) unless we or our affiliate licenses the facility. You will use any information obtained through the Reservation System to refer guests, directly or indirectly, only to Chain Facilities. This Section does not apply to any Chain Facility located in the Protected Territory on the Effective Date, which we may renew, relicense, allow to expand, or replace with a replacement Facility located with the same trading area having not more than 120% of the guest rooms of the replaced Chain Facility if its franchise with us terminated or is not renewed. The Protected Territory fairly represents the Facility's trading area, and you acknowledge that. There

SUPEXHCI 2/98

1

are no express or implied territorial rights or agreements between the parties except as stated in this Section. The covenants in this Section are mutually dependent; if you breach this Section, your Protected Territory will be the Location only.

**3.**    **Your Improvement and Operating Obligations.** Your obligations to improve, operate and maintain the Facility are:

3.1    **Improvements.** You must select and acquire the Location and the Facility and acquire, equip and supply the Facility in accordance with System Standards for entering conversion facilities. You must begin improvement of the Facility no later than thirty (30) days after the Effective Date. The Facility must score 300 or fewer points (or equivalent) within ninety (90) days after the Effective Date. You must thereafter continue renovation and improvement of the Facility as the Punch List requires and pass any related quality assurance inspection within nine (9) months after the Effective Date. All improvements will comply with System Standards, any Approved Plans, Schedule B and any Punch List attached to this Agreement. Your general contractor or you must carry the insurance required under this Agreement during renovation. If you do not commence or complete the improvement of the Facility by the dates specified in this Section 3.1, or the Facility does not meet the post-transfer quality assurance inspection standard or complete the post-transfer improvements specified in the Punch List after the Effective Date, then we may, in our sole discretion, terminate this Agreement by giving written notice to you. Time is of the essence for the Improvement Obligation. We may, however, in our sole discretion, grant one or more extensions of time to perform any phase of the Improvement Obligation. The grant of an extension will not waive any other default existing at the time the extension is granted.

3.2    **Improvement Plans.** You will create plans and specifications for the work described in Section 3.1 (based upon the System Standards and this Agreement) if we so request and submit them for our approval before starting improvement of the Location. We will not unreasonably withhold or delay our approval, which is intended only to test compliance with System Standards, and not to detect errors or omissions in the work of your architects, engineers, contractors or the like. Our review does not cover technical, architectural or engineering factors, or compliance with federal, state or local laws, regulations or code requirements. We will not be liable to you or your lenders, contractors, employees, guests or others on account of our review or approval of your plans, drawings or specifications, or our inspection of the Facility before, during or after renovation or construction. Any material modifications to or variations from the Approved Plans require our prior written approval. You will promptly provide us with copies of permits, job progress reports, and other information as we may reasonably request. We may inspect the work while in progress without prior notice.

3.3    **Opening.** You may continue to identify the Facility as part of the System prior to completing the Improvement Obligation.

3.4    **Operation.** You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with the law and System Standards. If you do not manage the Chain Facility personally, you must employ a full-time general manager who will be dedicated solely to the

SUPEXHC1 2/98

2

Facility. You will keep the Facility in a clean, neat, and sanitary condition. You will clean, repair, replace, renovate, refurbish, paint, and redecorate the Facility and its FF&E as and when needed to comply with System Standards. The Facility will accept payment from guests by all credit and debit cards we designate in the System Standards Manual. You may add to or discontinue the amenities, services and facilities described in Schedule B, or to lease or subcontract any service or portion of the Facility only with our prior written consent, which we will not unreasonably withhold or delay. Your front desk operation, telephone system, parking lot, swimming pool and other guest service facilities may not be shared with or used by guests of another lodging or housing facility.

3.5 **Training.** You or one of your principal owners will attend at our request, at your expense for travel, meals and lodging, and at a mutually convenient time, an orientation program of not more than 3 days held in our offices. The Facility's general manager must attend the training program described in Section 4.1 even if you employ other managers for other Chain facilities who have already received such training. You will train or cause the training of all Facility personnel as and when required by System Standards and this Agreement. You will pay all travel, lodging, meals and compensation expenses of the people you send for training programs, tuition, and all travel, lodging, meal and facility and equipment rental expenses of our representatives if training is provided at the Facility.

3.6 **Marketing.** You will participate in System marketing programs, including the Directory and the Reservation System. You will obtain and maintain the computer and communications service and equipment we specify to participate in the Reservation System. You will comply with our rules and standards for participation, and will honor reservations and commitments to guests and travel industry participants. You may implement, at your option and expense, your own local advertising. Your advertising materials must use the Marks correctly, and must comply with System Standards or be approved in writing by us prior to publication. You will stop using any non-conforming, out-dated or misleading advertising materials if we so request.

3.7 **Governmental Matters.** You will obtain as and when needed all governmental permits, licenses and consents required by law to construct, acquire, renovate, operate and maintain the Facility and to offer all services you advertise or promote. You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings.

3.8 **Inspections and Audits.** You will permit our representatives to perform quality assurance inspections of the Facility and audit your financial and operating books and records (including tax returns), particularly those relating to the Facility and any related business, with or without prior notice of the inspection or audit. The inspections and audits will commence during normal business hours, although we may observe Facility operation and accounting activity at any time. You, the Facility staff and your other agents and employees will cooperate with our inspectors and auditors in the performance of their duties. You will pay us any underpayment of, and we will pay you or credit your Recurring Fee account for any overpayment of, Recurring Fees discovered by the audit. If the Facility does not pass an inspection, you refuse to cooperate with our inspectors or our auditors when they arrive for an audit at a time scheduled at least 3 business days in advance or the

SUPEXHC1 2/98

audit reveals that you paid us less than 97% of the correct amount of Recurring Fees for a fiscal year or longer, you will pay us the Audit Fee described in Section 4.8, or the reasonable costs of travel, lodging and meal expenses for reinspection and any reinspection fee we may impose. We may publish or disclose the results of quality assurance inspections.

3.9    **Reports and Accounting.** You will prepare and submit timely monthly reports containing the information we require about the Facility's performance during the preceding month. You will prepare and submit other reports and information about the Facility as we may reasonably request from time to time or in the System Standards Manual. You will prepare and maintain any reports required under the System Standards Manual in the Facility's property management or reservation computer system, including the name and address of Facility guests, if collected, and send them to us or allow us to access them by means of a telephone datalink. You will allow us access to the reports and data stored on the Facility's property management or reservation computer system via telephone, provided that we will not unreasonably interfere with normal functioning of the property management or reservation computer system. You will maintain accounting books and records in accordance with generally accepted accounting principles and the American Hotel & Motel Association Uniform System of Accounts for Hotels, as amended, subject to this Agreement and other reasonable accounting standards we may specify from time to time. You will prepare and submit to us if we so request your annual and semi-annual financial statements. If your financial statements are audited, you will send us a copy of your audited statements if we ask for them.

3.10    **Insurance.** You will obtain and maintain during the Term of this Agreement the insurance coverage required under the System Standards Manual from insurers meeting the standards established in the Manual. Unless we instruct you otherwise, your liability insurance policies will name Super 8 Motels, Inc. and Cendant Corporation, its successors and assigns as additional insureds.

3.11    **Conferences.** You or your representative will attend each Chain conference and pay the System Conference Fee we set for the Chain franchisees, if and when we determine to hold a System conference. The Fee will be the same for all U.S. and Canadian facilities that we franchise. You will receive reasonable notice of a Chain conference.

3.12    **Purchasing.** You will purchase or obtain certain items we designate as proprietary or that bear Marks, such as signage, only from suppliers we approve. You may purchase any other items for the Facility from any competent source you select, so long as the items meet or exceed System Standards.

3.13    **Good Will.** You will use reasonable efforts to protect, maintain and promote the name "Super 8 Motels" and its distinguishing characteristics, and the other Marks. You will not permit or allow your officers, directors, principals, employees, representatives, or guests of the Facility to engage in, conduct which is unlawful or damaging to the good will or public image of the Chain or System. You will follow System Standards for identification of the Facility and for you to avoid confusion on the part of guests, creditors, lenders, investors and the public as to your ownership and operation of the Facility, and the identity of your owners. You will refer any guest that the Facility cannot accommodate to the nearest Chain Facility unless and until the guest expresses a preference for a different lodging facility. You will participate in any Chain-wide guest service and

SUPEXHC1 2/98

satisfaction guaranty programs we require in good faith for all Chain Facilities.

3.14    **Credit Card Programs.** You recognize that the Super 8 "VIP Card" credit card program is an integral part of the System. You will participate in the VIP Card program and other proprietary credit card programs we may require from time to time, subject to compliance with applicable law.

3.15    **Facility Modifications.** You may materially modify, diminish or expand the Facility (or change its interior design, layout, FF&E, or facilities) only after you receive our prior written consent, which we will not unreasonably withhold or delay. You will pay our Rooms Addition Fee then in effect for each additional guest room you may add to the Facility over 120 rooms. If we so request, you will obtain our prior written approval of the plans and specifications for any material modification, which we will not unreasonably withhold or delay. You will not open to the public any material modification until we inspect it for compliance with the Approved Plans and System Standards.

3.16    **Courtesy Lodging.** You will provide lodging at the "Employee Rate" established in the System Standards Manual from time to time (but only to the extent that adequate room vacancies exist) to our representatives traveling on business, but not more than three standard guest rooms at the same time.

4.      **Our Operating and Service Obligations.** We will provide you with the following services and assistance:

4.1    **Training.** We will offer the orientation program described in Section 3.5. Between 30 days prior to the projected Opening Date and 6 months afterwards, we will offer at a location in the United States we designate, and your representative (usually the general manager) must complete, a training program to our satisfaction. The training program will not exceed three weeks in duration and will cover such topics as System Standards, services available from us, and operating a Chain Facility. We charge a tuition of $250.00 for each manager trainee or other employee who attends the program. Any replacement general manager of the Facility must complete the training program within the time specified in the System Standards Manual. You must pay for your representative's travel, lodging, meals, incidental expenses, compensation and benefits. We may conduct additional mandatory or optional training for your employees, including, subject to the availability of our training personnel, an optional property opening orientation at the Facility. We may charge reasonable tuition for these additional programs. We may offer or sell to you video tapes, computer discs or other on-site training aids and materials, or require you to buy them at reasonable prices. A portion of the Advertising and Reservation Fund proceeds, determined in our sole discretion, will be allocated to our training activities and related direct and indirect overhead expenses.

4.2    **Reservation System.** We will operate and maintain (directly or by subcontracting with an affiliate or one or more third parties) a computerized Reservation System or such technological substitute(s) as we determine, in our discretion. We will use System Assessment Fees as specified in Schedule C, allocated in our discretion from the Advertising and Reservation Fund, for the acquisition, development, support, equipping, maintenance, improvement and operation of the Reservation System. The Facility will participate in the Reservation System, commencing with the Opening Date for the balance of the Term. We have the right to provide reservation services to

SUPEXHC1 2/98

lodging facilities other than Chain Facilities or to other parties. We will not offer to or accept from callers to our general consumer, toll-free telephone number in the United States reservations for any lodging facilities other than Chain Facilities. We may use funds in the Advertising and Reservation Fund to reimburse our reasonable direct and indirect costs, overhead or other expenses of operating the Reservation System.

### 4.3   Marketing.

4.3.1   We will use System Assessment Fees, allocated in our discretion from the Advertising and Reservation Fund, to promote public awareness and usage of Chain Facilities by implementing appropriate international, national, regional and local advertising, promotion, publicity, market research and other marketing programs, training programs and related activities, and the production and distribution of System publications and directories of hotels. We will determine in our discretion: (i) The nature and type of media placement; (ii) The allocation (if any) among international, national, regional and local markets; and (iii) The nature and type of advertising copy, other materials and programs. System Assessment Fees may reimburse us or an affiliate for the reasonable direct and indirect costs, overhead or other expenses of providing marketing services. We are not obligated to supplement the Advertising and Reservation Fund or to advance funds to pay for System marketing activities. We do not promise that you or the Facility will benefit directly or proportionately from System marketing activities.

4.3.2   We may, at our discretion, implement special international, national, regional or local promotional programs (which may or may not include the Facility) and may make available to you (to use at your option) media advertising copy and other marketing materials for prices which reasonably cover the materials' direct and indirect costs.

4.3.3   We may, at our discretion, implement "group booking" programs created to encourage use of Chain Facilities for tours, conventions and the like, possibly for separate fees in addition to the System Assessment Fee, for any resulting group booking accepted at the Facility.

4.3.4   We will publish the Chain Directory. We will supply Directories to you for display at locations specified in the System Standards Manual or policy statements. We will include the Facility in the Chain Directory after it opens if you submit the information we request on time, and you are not in default under this Agreement at the time we must arrange for publication. We may assess a reasonable charge for the direct and indirect expenses (including overhead) of producing and delivering the Directories.

### 4.4   Purchasing.   We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

4.5    **The System.** We will control and establish requirements for all aspects of the System. We may, in our discretion, change, delete from or add to the System, including any of the Marks or System Standards, in response to changing market conditions. We may, in our discretion, permit deviations from System Standards, based on local conditions and our assessment of the circumstances.

4.6    **Consultations and Standards Compliance.** We will assist you to understand your obligations under System Standards by telephone, mail, during quality assurance inspections, through the System Standards Manual, at training sessions and during conferences and meetings we conduct. We will provide telephone and mail consultation on matters of Facility operation and marketing through our representatives.

4.7    **System Standards Manual and Other Publications.** We will specify System Standards in the System Standards Manual, policy statements or other publications. We will lend you one copy of the System Standards Manual promptly after we sign this Agreement. We will send you any System Standards Manual revisions and/or supplements as and when issued. We will send you all other publications for Chain franchisees and all separate policy statements in effect from time to time.

4.8    **Inspections and Audits.** We have the unlimited right to conduct unannounced quality assurance inspections of the Facility and its operations, records and Mark usage to test the Facility's compliance with System Standards and this Agreement, and the audits described in Section 3.8. We have the unlimited right to reinspect if the Facility does not achieve the score required on an inspection. We may impose a reinspection fee and will charge you for our costs as provided in Section 3.8. You will pay us an "Audit Fee" of $300.00 when we invoice you for an Audit Fee *under Section 3.8. We may increase the Audit Fee on a Chain-wide basis to cover any increases in our audit costs to not more than $500.00, effective any time after December 31, 2005.* Our inspections are solely for the purposes of checking compliance with System Standards.

5.    **Term.** The Term begins on the Effective Date and expires on the day prior to the **twentieth** anniversary of the Opening Date. Some of your duties and obligations will survive termination or expiration of this Agreement. You will execute and deliver to us with this Agreement a notarized Declaration of Franchise Agreement (the "Declaration") in recordable form. We will countersign and return one copy of the Declaration to you. We may, at our option, record the Declaration in the real property records of the county where the Facility is located. The Declaration will be released at your request and expense when this Agreement terminates or expires and you perform your post-termination obligations. NEITHER PARTY HAS RENEWAL RIGHTS OR OPTIONS.

6.    **Application and Initial Fees.** We have received from you a non-refundable Application Fee of $1,000.00. You will pay us a non-refundable Initial Fee in the amount of $20,000.00, when you sign this Agreement, which is fully earned when we sign this Agreement.

7.    **Recurring Fees, Taxes and Interest.**

7.1    You will pay us certain "Recurring Fees" in U.S. dollars (or such other currency as we may

SUPEXHC1 2/98

7

direct if the Facility is outside the United States) 15 days after the month in which they accrue, without billing or demand. Recurring Fees include the following:

      7.1.1   A "Royalty" equal to five percent (5%) of Gross Room Sales of the Facility accruing during the calendar month, accrues from the earlier of the Opening Date or the date you identify the Facility as a Chain Facility or operate it under a Mark until the end of the Term.

      7.1.2   A "System Assessment Fee" as stated in Schedule C to be paid into the Advertising and Reservation Fund, accrues from the Opening Date until the end of the Term, including during suspension periods. Upon 60 days written notice, we may change the System Assessment Fee after the tenth anniversary of the Effective Date to cover costs as described in Schedule C or to cover the cost of additional services or programs for Chain Facilities. At our option, you will also pay or reimburse us for travel and other agent commissions paid for reservations at the Facility and other fees levied to pay for reservations for the Facility originated or processed through other reservation systems, the Internet and networks. We may charge a reasonable service fee for this service.

7.2     "Taxes" are equal to any federal, state or local sales, gross receipts, use, value added, excise or similar taxes assessed against us on the Recurring Fees by the jurisdictions where the Facility is located, but not including any income tax, franchise or other tax for our privilege of doing business in your State. You will pay Taxes directly to us when due.

7.3     "Interest" is payable on any past due amount payable to us under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid. Interest is payable when you receive our invoice.

7.4     If a Transfer occurs, your transferee or you will pay us a "Relicense Fee" equal to the Initial Fee we would then charge a new franchisee for the Facility.

## 8.    Indemnifications.

8.1     Independent of your obligation to procure and maintain insurance, you will indemnify, defend and hold the Indemnitees harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by any Indemnitee for any investigation, claim, action, suit, demand, administrative or alternative dispute resolution proceeding, relating to or arising out of any transaction, occurrence or service at, or involving the operation of, the Facility, any breach or violation of any contract or any law, regulation or ruling by, or any act, error or omission (active or passive) of, you, any party associated or affiliated with you or any of the owners, officers, directors, employees, agents or contractors of you or your affiliates, including when you are alleged or held to be the actual, apparent or ostensible agent of the Indemnitee, or the active or passive negligence of any Indemnitee is alleged or proven. You have no obligation to indemnify an Indemnitee for damages to compensate for property damage or personal injury if a court of competent jurisdiction makes a final decision not subject to further appeal that the Indemnitee engaged in willful misconduct or intentionally caused such property damage or bodily injury. This exclusion from the obligation to indemnify shall not, however, apply if the property damage or bodily injury resulted from the use of reasonable force by the Indemnitee to protect persons or property.

SUPEXHC1 2/98

8.2     You will respond promptly to any matter described in the preceding paragraph, and defend *the Indemnitee. You will reimburse the Indemnitee for all costs of defending the matter*, including reasonable attorneys' fees, incurred by the Indemnitee if your insurer or you do not assume defense of the Indemnitee promptly when requested, or separate counsel is appropriate, in our discretion, because of actual or potential conflicts of interest. We must approve any resolution or course of action in a matter that could directly or indirectly have any effect on parties other than you and the complaining party in the matter, or could serve as a precedent for other matters.

8.3     We will indemnify, defend and hold you harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by you in any action or claim arising from your proper use of the System alleging that your use of the System and any property we license to you is an infringement of a third party's rights to any trade secret, patent, copyright, trademark, service mark or trade name. You will promptly notify us in writing when you become aware of any alleged infringement or an action is filed against you. You will cooperate with our defense and resolution of the claim. *We may resolve the matter by obtaining a license of the property for you at our* expense, or by requiring that you discontinue using the infringing property or modify your use to avoid infringing the rights of others.

## 9.  Your Assignments, Transfers and Conveyances.

9.1  **Transfer of the Facility.** This Agreement is personal to you (and your owners if you are an entity). We are relying on your experience, skill and financial resources (and that of your owners and the guarantors, if any) to sign this Agreement with you. You may finance the Facility and grant a lien, security interest or encumbrance on it without notice to us or our consent. If a Transfer is to occur, the transferee or you must comply with Section 9.3. Your License is subject to termination when the Transfer occurs. The License is not transferable to your transferee, who has no right or authorization to use the System and the Marks when you transfer ownership or possession of the Facility. The transferee may not operate the Facility under the System, and you are responsible for performing the post-termination obligations in Section 13. You and your owners may, only with our prior written consent and after you comply with Sections 9.3 and 9.6, assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise. Transactions involving Equity Interests that are not Equity Transfers do not require our consent and are not Transfers.

9.2  **Public Offerings and Registered Securities.** You may engage the first registered public offering of your Equity Interests only after you pay us a public offering fee equal to $25,000. Your Equity Interests (or those of a person, parent, subsidiary, sibling or affiliate entity, directly or indirectly effectively controlling you), are freely transferable without the application of this Section if they are, on the Effective Date, or after the public offering fee is paid, they become, registered under the federal Securities Act of 1933, as amended, or a class of securities registered under the Securities Exchange Act of 1934, as amended, or listed for trading on a national securities exchange or the automated quotation system of the National Association of Securities Dealers, Inc. (or any successor system), provided that any tender offer for at least a majority of your Equity Interests will be an Equity Transfer subject to Section 9.1.

SUPEXHC1 2/98

9.3 **Conditions.** We may, to the extent permitted by applicable law, condition and withhold our consent to a Transfer when required under this Section 9 until the transferee and you meet certain conditions. If a Transfer is to occur, the transferee (or you, if an Equity Transfer is involved) must first complete and submit our Application, qualify to be a franchisee in our sole discretion, given the circumstances of the proposed Transfer, provide the same supporting documents as a new franchise applicant, pay the Application and Relicense Fees then in effect, sign the form of Franchise Agreement we then offer in conversion transactions and agree to renovate the Facility as we reasonably determine, if the Facility achieves a score of less than "Satisfactory" on its most recent Quality Assurance inspection. We will provide a Punch List of improvements we will require after we receive the transferee's Application. We must also receive general releases from you and each of your owners, and payment of all amounts then owed to us and our affiliates by you, your owners, your affiliates, the transferee, its owners and affiliates, under this Agreement or otherwise. Our consent to the transaction will not be effective until these conditions are satisfied.

9.4 **Permitted Transferee Transactions.** You may transfer an Equity Interest or effect an Equity Transfer to a Permitted Transferee without obtaining our consent, renovating the Facility or paying a Relicense Fee or Application Fee. No Transfer will be deemed to occur. You also must not be in default and you must comply with the application and notice procedures specified in Sections 9.3 and 9.6. Each Permitted Transferee must first agree in writing to be bound by this Agreement, or at our option, execute the Franchise Agreement form then offered prospective franchisees. No transfer to a Permitted Transferee shall release a living transferor from liability under this Agreement or any guarantor under any Guaranty of this Agreement. You must comply with this Section if you transfer the Facility to a Permitted Transferee. A transfer resulting from a death may occur even if you are in default under this Agreement.

9.5 **Attempted Transfers.** Any transaction requiring our consent under this Section 9 in which our consent is not first obtained shall be void, as between you and us. You will continue to be liable for payment and performance of your obligations under this Agreement until we terminate this Agreement, all your financial obligations to us are paid and all System identification is removed from the Facility.

9.6 **Notice of Transfers.** You will give us at least 30 days prior written notice of any proposed Transfer or Permitted Transferee transaction. You will notify us when you sign a contract to Transfer the Facility and 10 days before you intend to close on the transfer of the Facility. We will respond to all requests for our consent and notices of Permitted Transferee transactions within a reasonable time not to exceed 30 days. You will notify us in writing within 30 days after a change in ownership of 25% or more of your Equity Interests that are not publicly held or that is not an Equity Transfer, or a change in the ownership of the Facility if you are not its owner. You will provide us with lists of the names, addresses, and ownership percentages of your owner(s) at our request.

**10.     Our Assignments.** We may assign, delegate or subcontract all or any part of our rights and duties under this Agreement, including by operation of law, without notice and without your consent. We will have no obligations to you after you are notified that our transferee has assumed our obligations under this Agreement except those that arose before we assign this Agreement.

## 11.   Default and Termination.

11.1   **Default.** In addition to the matters identified in Section 3.1, you will be in default under this Agreement if (a) you do not pay us when a payment is due, (b) you do not perform any of your other obligations when this Agreement and the System Standards Manual require, or (c) if you otherwise breach this Agreement. If your default is not cured within ten days after you receive written notice from us that you have not filed your monthly report, paid us any amount that is due or breached your obligations regarding Confidential Information, or within 30 days after you receive written notice from us of any other default (except as noted below), then we may terminate this Agreement by written notice to you under Section 11.2. We will not exercise our right to terminate if you have completely cured your default, or until any waiting period required by law has elapsed, or, in the case of quality assurance default, you have acted diligently to cure the default but cannot do so and have entered into a written improvement agreement with us within 30 days after the failing inspection to cure the default within 90 days after the inspection. We may terminate this Agreement if you do not perform that improvement agreement.

11.2   **Termination.** We may terminate the License, or this Agreement if the Opening Date has not occurred, effective when we send written notice to you or such later date as required by law or as stated in the default notice, when (1) you do not cure a default as provided in Section 11.1 or we are authorized to terminate under Section 3.1, (2) you discontinue operating the Facility as a "Super 8 Motel", (3) you do or perform, directly or indirectly, any act or failure to act that in our reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Marks or the System, (4) you lose possession or the right to possession of the Facility, (5) you (or any guarantor) suffer the termination of another license or franchise agreement with us or one of our affiliates, (6) you intentionally maintain false books and records or submit a materially false report to us, (7) you (or any guarantor) generally fail to pay debts as they come due in the ordinary course of business, (8) you, any guarantor or any of your owners or agents misstated to us or omitted to tell us a material fact to obtain or maintain this Agreement with us, (9) you receive two or more notices of default from us in any one year period (whether or not you cure the defaults), (10) a violation of Section 9 occurs, (11) you or any of your Equity Interest owners contest in court the ownership or right to license or franchise all or any part of the System or the validity of any of the Marks, (12) you, any guarantor or the Facility is subject to any voluntary or involuntary bankruptcy, liquidation, dissolution, receivership, assignment, reorganization, moratorium, composition or a similar action or proceeding that is not dismissed within 60 days after its filing, or (13) you maintain or operate the Facility in a manner that endangers the health or safety of the Facility's guests.

11.3   **Casualty and Condemnation.**

11.3.1   You will notify us promptly after the Facility suffers a Casualty that prevents you from operating in the normal course of business, with less than 75% of guest rooms available. You will give us information on the availability of guest rooms and the Facility's ability to honor advance reservations. You will tell us in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to conform to System Standards and its condition prior to the Casualty. This restoration will be completed within 180 days after the Casualty. You may decide within the 60 days after the Casualty, and if we do not hear from you, we will assume

SUPEXHC1 2/98

11

that you have decided, to terminate the License, effective as of the date of your notice or 60 days after the Casualty, whichever comes first. If the License so terminates, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13. You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as a transient lodging facility after the Casualty.

11.3.2  You will notify us in writing within 10 days after you receive notice of any proposed Condemnation of the Facility, and within 10 days after receiving notice of the Condemnation date. This Agreement will terminate on the date the Facility or a substantial portion is conveyed to or taken over by the condemning authority.

11.3.3  The exclusive territory covenants in Section 2 will terminate when you give us notice of any proposed Condemnation or that you will not restore the Facility after a Casualty.

11.4  **Our Other Remedies.**  If you violate your covenant in Section 2, we may reduce the Protected Territory to the Location. We may suspend the Facility from the Reservation System for any default or failure to pay or perform under this Agreement, discontinue Reservation System referrals to the Facility for the duration of such suspension, and may divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment or default. All Reservation System User Fees accrue during the suspension period. Reservation service will be restored after you have fully cured any and all defaults and failures to pay and perform. We may deduct or assess points under our quality assurance inspection program for your failure to comply with this Agreement or System Standards. We may omit the Facility from the Directory if you are in default on the date we must determine which Chain Facilities are included in the Directory. You recognize that any use of the System not in accord with this Agreement will cause us irreparable harm for which there is no adequate remedy at law, entitling us to injunctive and other relief. We may litigate to collect amounts due under this Agreement without first issuing a default or termination notice. If needed, our consent or approval may be withheld while you are in default under this Agreement or may be conditioned on the cure of all your defaults.

11.5  **Your Remedies.**  If we fail to issue our approval or consent as and when required under this Agreement within a reasonable time of not less than 30 days after we receive all of the information we request, and you believe our refusal to approve or consent is wrongful, you may bring a legal action against us to compel us to issue our approval or consent to the obligation. To the extent permitted by applicable law, this action shall be your exclusive remedy. We shall not be responsible for direct, indirect, special, consequential or exemplary damages, including, but not limited to, lost profits or revenues.

## 12.    Liquidated Damages.

12.1  **Generally.**  If we terminate the License or this Agreement under Section 11.2, or you terminate the License or this Agreement (except under Section 11.3 or as a result of our default which we do not cure within a reasonable time after written notice), you will pay us within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued Royalties and System Assessment Fees during the immediately preceding 36 full calendar months (or the number of months remaining in the unexpired Term at the date of termination, whichever is

SUPEXHC1 2/98

12

less). If the Facility has been open for less than 36 months, then the amount shall be the average monthly Royalties and System Assessment Fees since the Opening Date multiplied by 36. You will also pay any applicable Taxes assessed on such payment. Liquidated Damages will not be less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility. If we terminate this Agreement under Section 3 before the Opening Date, you will pay us within 10 days after you receive our notice of termination Liquidated Damages equal to one-half the amount payable for termination under Section 11.2. Liquidated Damages are paid in place of our claims for lost future Recurring Fees under this Agreement. Our right to receive other amounts due under this Agreement are not affected.

12.2   **Condemnation Payments.** If a Condemnation occurs, you will pay us the fees set forth in Section 7 for a period of one year after we receive the initial notice of condemnation described in Section 11.3.2 or until the Condemnation occurs, whichever is longer. If the Condemnation is completed before the one year notice period expires, you will pay us Liquidated Damages equal to the average daily Royalties and System Assessment Fees for the 12 month period preceding the date of your condemnation notice to us multiplied by the number of days remaining in the one year notice period. This payment will be made within 30 days after Condemnation is completed (when you close the Facility or you deliver it to the condemning authority). If the Condemnation is completed after the one year notice period expires you will pay no Liquidated Damages, but the fees set forth in Section 7 must be paid when due until Condemnation is completed.

12.3   **Exclusions.** The amount of System Assessment Fees used in the computation of Liquidated Damages shall exclude travel agent commissions, airline reservation system charges and related handling charges.

13.   <u>**Your Duties At and After Termination**</u>. When this Agreement terminates for any reason whatsoever:

13.1   **System Usage Ceases.** You will immediately stop using the System to operate and identify the Facility. You will remove all signage bearing any Marks and follow the other steps detailed in the System Standards Manual for changing the identification of the Facility. You will promptly paint over or remove distinctive System trade dress, color schemes and architectural features.

13.2   **Other Duties.** You will pay all amounts owed to us under this Agreement within 10 days after termination. You will owe us Recurring Fees on Gross Room Sales accruing while the Facility is identified as a "Super 8 Motel", including the System Assessment Fees for so long as the Facility receives service from the Reservation System. We may immediately remove the Facility from the Reservation System and divert reservations as authorized in Section 11.4. We may also, to the extent permitted by applicable law, and without prior notice enter the Facility, and any other parcels, remove software (including archive and back-up copies) for accessing the Reservation System, all copies of the System Standards Manual, Confidential Information, equipment and all other personal property of ours, and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that you have not removed or obliterated within five days after termination. You will promptly pay or reimburse us for our cost of removing such items, net of the $10.00 purchase price for signage. We will exercise reasonable care in removing or painting over

SUPEXHC1 2/98

13

signage. We will have no obligation or liability to restore the Facility to its condition prior to removing the signage. We shall have the right, but not the obligation, to purchase some or all of the Facility's Mark-bearing FF&E and supplies at the lower of their cost or net book value, with the right to set off their aggregate purchase price against any sums then owed us by you.

13.3    **Advance Reservations.** The Facility will honor any advance reservations, including group bookings, made for the Facility prior to termination at the rates and on the terms established when the reservations are made and pay when due all related travel agent commissions.

13.4    **Survival of Certain Provisions.** Sections 3.8 (as to audits, for 2 years after termination), 3.9 (as to information relating to the Term, for 2 years after termination), 3.13, 7 (as to amounts accruing through termination), 8, 11.4, 12, 13, 15, 16 and 17 survive termination of this Agreement, whether termination is initiated by you or us, even if termination is wrongful.

**14.**    **Your Representations and Warranties.** The parties disclaim making or relying upon any representation, promise, covenant, or warranty, express or implied, oral or written, except as expressly stated in this Agreement. You expressly represent and warrant to us as follows:

14.1    **Quiet Enjoyment and Financing.** You own, or will own prior to commencing improvement, or lease, the Location and the Facility. You will be entitled to possession of the Location and the Facility during the entire Term without restrictions that would interfere with your performance under this Agreement, subject to the reasonable requirements of any financing secured by the Facility. You have, when you sign this Agreement, and will maintain during the Term, adequate financial liquidity and financial resources to perform your obligations under this Agreement.

14.2    **This Transaction.** You have received, at least 10 business days prior to execution of this Agreement and making any payment to us, our current Uniform Franchise Offering Circular for prospective franchisees. Neither we nor any person acting on our behalf has made any oral or written representation or promise to you that is not written in this Agreement on which you are relying to enter into this Agreement. You release any claim against us or our agents based on any oral or written representation or promise not stated in this Agreement. You and the persons signing this Agreement for you have full power and authority and have been duly authorized, to enter into and perform or cause performance of your obligations under this Agreement. You have obtained all necessary approvals of your owners, Board of Directors and lenders. Your execution, delivery and performance of this Agreement will not violate, create a default under or breach of any charter, bylaws, agreement or other contract, license, permit, indebtedness, certificate, order, decree or security instrument to which you or any of your principal owners is a party or is subject or to which the Facility is subject. Neither you nor the Facility is the subject of any current or pending merger, sale, dissolution, receivership, bankruptcy, foreclosure, reorganization, insolvency, or similar action or proceeding on the date you execute this Agreement and was not within the three years preceding such date, except as disclosed in the Application. You will submit to us the documents about the Facility, you, your owners and your finances that we request in the Franchise Application (or after our review of your initial submissions) before or within 30 days after you sign this Agreement.

14.3    **No Misrepresentations or Implied Covenants.** All written information you submit to us about the Facility, you, your owners, any guarantor, or the finances of any such person or entity, was or will be at the time delivered and when you sign this Agreement, true, accurate and complete, and such information contains no misrepresentation of a material fact, and does not omit any material fact necessary to make the information disclosed not misleading under the circumstances. There are no express or implied covenants or warranties, oral or written, between we and you except as expressly stated in this Agreement.

## 15.    Proprietary Rights.

15.1    **Marks and System.** You will not acquire any interest in or right to use the System or Marks except under this Agreement. You will not apply for governmental registration of the Marks, or use the Marks or our corporate name in your legal name, but you may use a Mark for an assumed business or trade name filing.

15.2    **Inurements.** All present and future distinguishing characteristics, improvements and additions to or associated with the System by us, you or others, and all present and future service marks, trademarks, copyrights, service mark and trademark registrations used and to be used as part of the System, and the associated good will, shall be our property and will inure to our benefit. No good will shall attach to any secondary designator that you use.

15.3    **Other Locations and Systems.** We and our affiliates each reserve the right to own, in whole or in part, and manage, operate, use, lease, finance, sublease, franchise, license (as licensor or licensee), provide services to or joint venture (i) distinctive separate lodging or food and beverage marks and other intellectual property which are not part of the System, and to enter into separate agreements with you or others (for separate charges) for use of any such other marks or proprietary rights, (ii) other lodging, food and beverage facilities, or businesses, under the System utilizing modified System Standards, and (iii) a Chain Facility at or for any location other than the Location or, in the case of a Chain Facility of the same name, in the Protected Territory. You acknowledge that we are affiliated with or in the future may become affiliated with other lodging providers or franchise systems that operate under names or marks other than the Marks. We and our affiliates may use or benefit from common hardware, software, communications equipment and services and administrative systems for reservations, franchise application procedures or committees, marketing and advertising programs, personnel, central purchasing, approved supplier lists, franchise sales personnel (or independent franchise sales representatives), etc.

15.4    **Confidential Information.** You will take all appropriate actions to preserve the confidentiality of all Confidential Information. Access to Confidential Information should be limited to persons who need the Confidential Information to perform their jobs and are subject to your general policy on maintaining confidentiality as a condition of employment or who have first signed a confidentiality agreement. You will not permit copying of Confidential Information (including, as to computer software, any translation, decompiling, decoding, modification or other alteration of the source code of such software). You will use Confidential Information only for the Facility and to perform under this Agreement. Upon termination (or earlier, as we may request), you shall return to us all originals and copies of the System Standards Manual, policy statements and Confidential Information "fixed in any tangible medium of expression," within the meaning of

SUPEXHCI 2/98

15

the U.S. Copyright Act, as amended. Your obligations under this subsection commence when you sign this Agreement and continue for trade secrets (including computer software we license to you) as long as they remain secret and for other Confidential Information, for as long as we continue to use the information in confidence, even if edited or revised, plus three years. We will respond promptly and in good faith to your inquiry about continued protection of any Confidential Information.

15.5    **Litigation.** You will promptly notify us of (i) any adverse or infringing uses of the Marks (or names or symbols confusingly similar), Confidential Information or other System intellectual property, and (ii) any threatened or pending litigation related to the System against (or naming as a party) you or us of which you become aware. We alone handle disputes with third parties concerning use of all or any part of the System. You will cooperate with our efforts to resolve these disputes. We need not initiate suit against imitators or infringers who do not have a material adverse impact on the Facility, or any other suit or proceeding to enforce or protect the System in a matter we do not believe to be material.

## 16.    Relationship of Parties.

16.1    **Independence.** You are an independent contractor. You are not our legal representative or agent, and you have no power to obligate us for any purpose whatsoever. We and you have a business relationship based entirely on and circumscribed by this Agreement. No partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this Agreement. You will exercise full and complete control over and have full responsibility for your contracts, daily operations, labor relations, employment practices and policies, including, but not limited to, the recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of your employees.

16.2    **Joint Status.** If you comprise two or more persons or entities (notwithstanding any agreement, arrangement or understanding between or among such persons or entities) the rights, privileges and benefits of this Agreement may only be exercised and enjoyed jointly. The liabilities and responsibilities under this Agreement will be the joint and several obligations of all such persons or entities.

## 17.    Legal Matters.

17.1    **Partial Invalidity.** If all or any part of a provision of this Agreement violates the law of your state (if it applies), such provision or part will not be given effect. If all or any part of a provision of this Agreement is declared invalid or unenforceable, for any reason, or is not given effect by reason of the prior sentence, the remainder of the Agreement shall not be affected. However, if in our judgment the invalidity or ineffectiveness of such provision or part substantially impairs the value of this Agreement to us, then we may at any time terminate this Agreement by written notice to you without penalty or compensation owed by either party.

17.2    **Waivers, Modifications and Approvals.** If we allow you to deviate from this Agreement, we may insist on strict compliance at any time after written notice. Our silence or inaction will not be or establish a waiver, consent, course of dealing, implied modification or estoppel. All modifications, waivers, approvals and consents of or under this Agreement by us must be in writing and signed by our authorized representative to be effective.

17.3    **Notices.** Notices will be effective if in writing and delivered by facsimile transmission with confirmation original sent by first class mail, postage prepaid, by delivery service, with proof of delivery, or by first class, prepaid certified or registered mail, return receipt requested, to the appropriate party at its address stated below or as may be otherwise designated by notice. Notices *shall be deemed given on the date delivered or date of attempted delivery, if refused.*

| | |
|---|---|
| Your name: | Deepam, Inc. |
| Your address: | 1013 W. Franklin St., Quincy, FL. 82351 |
| | Attention: Paresh Patel |
| Your fax No.: | |
| | |
| | *Super 8 Motels, Inc.* |
| Our address: | 6 Sylvan Way, Parsippany, New Jersey 07054-0278, |
| | Attention: Vice President-Franchise Administration |
| Fax No.: | (973) 496-5359 |

17.4    **Remedies.** Remedies specified in this Agreement are cumulative and do not exclude any remedies available at law or in equity. The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement. You consent and waive your objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you.

17.5    **Miscellaneous.** This Agreement will be governed by and construed under the laws of the State of New Jersey. The New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey. This Agreement is exclusively for the benefit of the parties. There are no third party beneficiaries. No agreement between us and anyone else is for your benefit. The section headings in this Agreement are for convenience of reference only. We may unilaterally revise Schedule C under this Agreement. This Agreement, together with the exhibits and schedules attached, is the entire agreement (superseding all prior representations, agreements and understandings, oral or written) of the parties about the Facility.

17.6    **Waiver of Jury Trial. The parties waive the right to a jury trial in any action related to this Agreement or the relationship between the franchisor, the franchisee, any guarantor and their respective successors and assigns.**



**(THIS PAGE LEFT BLANK INTENTIONALLY)**

SUPEXHC1 2/98

SEP-17-1999  10:06          N.ADMIN.DEPT.                                    P.02/02

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first
stated above.

WE:
SUPER 8 MOTELS, INC.

By: _____          Attest: _____
     C. Wayne Miller                            Assistant Secretary
     Vice President
     Franchise Administration


YOU, as franchisee:
DEEPAM, INC.

By: _____          Attest: _____
     Pareshkumar C. Patel
     President


SUPEXHC1 2/98

                                    19

                                                            TOTAL P.02

18 'd

# APPENDIX A

## DEFINITIONS

Advertising and Reservation Fund or "the Fund" means The Super 8 Advertising and Reservation Fund into which System Assessment Fees are paid. The Fund is under our exclusive control, and shall be used by us for funding and administering, in our sole discretion, the reservation system, the training school, the "VIP Club" credit card program, national and international directories, print and broadcast media advertising, technical and professional advice, consultation and services in connection with advertising, employment of personnel and office expenses for the administration of the Fund, advertising agency commissions, and other advertising or promotional programs we establish to promote the Chain.

Agreement means this Franchise Agreement.

Application Fee means the fee you pay when you submit your Application under Section 6.

Approved Plans means your plans and specifications for constructing or improving the Facility initially or after opening, as approved by us under Section 3.

Casualty means destruction or significant damage to the Facility by act of God or other event beyond your reasonable anticipation and control.

Chain means the network of Chain Facilities.

Chain Facility means a lodging facility we own, lease, manage, operate or authorize another party to operate using the System and identified by the Marks.

Condemnation means the taking of the Facility for public use by a government or public agency legally authorized to do so, permanently or temporarily, or the taking of such a substantial portion of the Facility that continued operation in accordance with the System Standards, or with adequate parking facilities, is commercially impractical, or if the Facility or a substantial portion is sold to the condemning authority in lieu of condemnation.

Conference Fee means the fee we charge for your attendance at a conference for Chain Facilities and their franchisees when and if held.

Confidential Information means any trade secrets we own or protect and other proprietary information not generally known to the lodging industry including confidential portions of the System Standards Manual or information we otherwise impart to you and your representatives in confidence. Confidential Information includes the "Rules of Operation Manual" and all other System Standards manuals and documentation, including those on the subjects of employee relations, finance and administration, field operation, purchasing and marketing, the Reservation System software and applications software.

Declaration means the Declaration of Franchise Agreement you and we sign under Section 5.

SUPEXHC1 2/98

20

Design Standards mean standards specified in the System Standards Manual from time to time for design, construction, renovation, modification and improvement of new or existing Chain Facilities, including all aspects of facility design, number of rooms, rooms mix and configuration, construction materials, workmanship, finishes, electrical, mechanical, structural, plumbing, HVAC, utilities, access, life safety, parking, systems, landscaping, amenities, interior design and decor and the like for a Chain Facility.

Directory means the general purpose directory we publish listing the names and addresses of Chain Facilities, and at our discretion, other Super 8 Motels and Super Suites facilities located outside the United States, Canada and Mexico.

Effective Date means the date that you first take possession of the Facility.

Equity Interests shall include, without limitation, all forms of equity ownership of you, including voting stock interests, partnership interests, limited liability company membership or ownership interests, joint and tenancy interests, the proprietorship interest, trust beneficiary interests and all options, warrants, and instruments convertible into such other equity interests.

Equity Transfer means any transaction in which your owners or you sell, assign, transfer, convey, pledge, or suffer or permit the transfer or assignment of, any percentage of your Equity Interests that will result in a change in control of you to persons other than those disclosed on Schedule B, as in effect prior to the transaction. Unless there are contractual modifications to your owners' rights, an Equity Transfer of a corporation or limited liability company occurs when either majority voting rights or beneficial ownership of more than 50% of the Equity Interests changes. An Equity Transfer of a partnership occurs when a newly admitted partner will be the managing, sole or controlling general partner, directly or indirectly through a change in control of the Equity Interests of an entity general partner. An Equity Transfer of a trust occurs when either a new trustee with sole investment power is substituted for an existing trustee, or a majority of the beneficiaries convey their beneficial interests to persons other than the beneficiaries existing on the Effective Date. An Equity Transfer does not occur when the Equity Interest ownership among the owners of Equity Interests on the Effective Date changes without the admission of new Equity Interest owners. An Equity Transfer occurs when you merge, consolidate or issue additional Equity Interests in a transaction which would have the effect of diluting the voting rights or beneficial ownership of your owners' combined Equity Interests in the surviving entity to less than a majority.

Facility means the Location, together with all improvements, buildings, common areas, structures, appurtenances, facilities, entry/exit rights, parking, amenities, FF&E and related rights, privileges and properties existing at the Location on the Effective Date or afterwards.

FF&E means furniture, fixtures and equipment.

FF&E Standards means standards specified in the System Standards Manual for FF&E and supplies to be utilized in a Chain Facility.

SUPEXHC1 2/98

21

"Super 8 Motel" and other marks (U.S. Reg. Nos.: 992,721; 1,691,852; 1,686,653; 1,706,143; 1,602,723; 1,343,591, and 1,768,824) and (ii) trademarks, trade names, trade dress, logos and derivations, and associated good will and related intellectual property interests.

Marks Standards means standards specified in the System Standards Manual for interior and exterior Mark-bearing signage, advertising materials, china, linens, utensils, glassware, uniforms, stationery, supplies, and other items, and the use of such items at the Facility or elsewhere.

Opening Date means the date on which we authorize you to open the Facility for business identified by the Marks and using the System.

Operations Standards means standards specified in the System Standards Manual for cleanliness, housekeeping, general maintenance, repairs, concession types, food and beverage service, vending machines, uniforms, staffing, employee training, guest services, guest comfort and other aspects of lodging operations.

Permitted Transferee means (i) any entity, natural person(s) or trust receiving from the personal representative of an owner any or all of the owner's Equity Interests upon the death of the owner, if no consideration is paid by the transferee or (ii) the spouse or adult issue of the transferor, if the Equity Interest transfer is accomplished without consideration or payment, or (iii) any natural person or trust receiving an Equity Interest if the transfer is from a guardian or conservator appointed for an incapacitated or incompetent transferor.

Protected Territory – the area within ½ mile at either side of the centerline of I-65, between exits 263 and 267.

Punch List means the list of upgrades and improvements attached as part of Schedule B, which you are required to complete under Section 3.

Recurring Fees means fees paid to us on a periodic basis, including without limitation, Royalties, System Assessment Fees, and other reservation fees and charges as stated in Section 7.

Relicense Fee means the fee your transferee or you pay to us under Section 7 when a Transfer occurs.

Reservation System or "Central Reservation System" means the system for offering to interested parties, booking and communicating guest room reservations for Chain Facilities described in Section 4.2.

Rooms Addition Fee means the fee we charge you for adding guest rooms to the Facility.

Royalty means the monthly fee you pay to us for use of the System under Section 7.1.1. "Royalties" means the aggregate of all amounts owed as a Royalty.

System means the comprehensive system for providing guest lodging facility services under the Marks as we specify which at present includes only the following: (a) the Marks; (b) other intellectual property, including Confidential Information, System Standards Manual and know-



how; (c) marketing, advertising, publicity and other promotional materials and programs; (d) System Standards; (e) training programs and materials; (f) quality assurance inspection and scoring programs; and (g) the Reservation System.

System Assessment Fee means the aggregate of all fees charged under Section 7.1.2 to pay for the cost of the System's marketing, advertising, Reservation System, training and other services.

System Standards means the standards for the participating in the System published in the System Standards Manual, including but not limited to Design Standards, FF&E Standards, Marks Standards, Operations Standards, Technology Standards and Maintenance Standards and any other standards, policies, rules and procedures we promulgate about System operation and usage.

System Standards Manual means the Rules of Operations Manual, the Trademark Identification Standards Manual and any other manual we publish or distribute specifying the System Standards.

Taxes means the amounts payable under Section 7.2 of this Agreement.

Technology Standards means standards specified in the System Standards Manual for local and long distance telephone communications services, telephone, telecopy and other communications systems, point of sale terminals and computer hardware and software for various applications, including, but not limited to, front desk, rooms management, records maintenance, marketing data, accounting, budgeting and interfaces with the Reservation System to be maintained at the Chain Facilities.

Term means the period of time during which this Agreement shall be in effect, as stated in Section 5.

Termination means a termination of the License under Sections 11.1 or 11.2 or your termination of the License or this Agreement.

Transfer means (1) an Equity Transfer, (2) you assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise without our consent as specified in Section 9, (3) you assign (other than as collateral security for financing the Facility) your leasehold interest in (if any), lease or sublease all or any part of the Facility to any third party, (4) you engage in the sale, conveyance, transfer, or donation of your right, title and interest in and to the Facility, (5) your lender or secured party forecloses on or takes possession of your interest in the Facility, directly or indirectly, or (6) a receiver or trustee is appointed for the Facility or your assets, including the Facility. A Transfer does not occur when you pledge or encumber the Facility to finance its acquisition or improvement, you refinance it, or you engage in a Permitted Transferee transaction.

"You" and "Your" means and refers to the party named as franchisee identified in the first paragraph of this Agreement and its Permitted Transferees.

"We", "Our" and "Us" means and refers to Super 8 Motels, Inc., a South Dakota corporation, its successors and assigns.
SUPEXHC1 2/98

24

# SCHEDULE A

(Legal Description of Facility)

## SCHEDULE B

PART I:        YOUR OWNERS:

| Name | Ownership Percentage | Type of Equity Interest |
|---|---|---|
| Pareshkumar C. Patel | 90% | common stock |
| Diptika Patel | 10% | common stock |

PART II:        THE FACILITY:

      Primary designation of Facility: Super 8 Motel

      Number of approved guest rooms: 129

      Parking facilities (number of spaces, description): 129

      Other amenities and facilities:

PART III:        DESCRIPTION AND SCHEDULE OF RENOVATIONS TO BE
                COMPLETED AS THE IMPROVEMENT OBLIGATION:

**[Punch List to be forwarded.]**

SUPEXHCI 2/98

SEP-14-1999  09:52      FRAN.ADMIN.DEPT.                                    P.02/09



## *FRANCHISOR: SUPER 8 MOTELS, INC.*

## *"SCHEDULE A"*
## *PUNCHLIST FOR CHANGE OF OWNERSHIP*
## *APRIL 26, 1999*

| *FACILITY* | *TIER* | *GUEST ROOMS* |
|---|---|---|
| Super 8 Motel #8164 | Motel | 126 |
| 624 Decatur Highway | | |
| Fultondale, AL 35068 | | |

*OWNER/APPLICANT*
Dave Park
(205) 841-2200

*FRANCHISE ADMINISTRATION*
Jeff Kayhart
(973) 496-5357

*Q.A. REPRESENTATIVE*
Jon Hoffman

### *PROPERTY CONDITION SUMMARY*

This is a 25 year old property that consists of 2 buildings: a single story commercial building containing lobby/front desk and public space and a 3-story, double-loaded, exterior corridor guest room building containing 126 rooms. Property also has a restaurant that is currently closed. Construction is concrete block with brick and stucco finish.

Some upgrading of the building exteriors, public areas and guestrooms is required. Landscaping is required to enhance curb appeal.

| | **EXISTING** | **STANDARD** |
|---|---|---|
| Lobby Dimensions: | 448 SF | 220 SF |
| Guest Room Dimensions: | 288 SF | 264 SF |

### *COMPLETION TIME*

All items listed in this punchlist must be completed within 120 days of the new license agreement unless otherwise noted.



SEP-14-1999  09:52     TRAN.ADMIN.DEPT.                                    P.03/09

2

Super 8 Motel #8164
Fultondale, AL

## *PROPERTY EXTERIOR*

1.  **The Design and Development Department must approve all exterior
    renovation plans prior to commencement of work. Written approval
    must be obtained from the Design and Development Department for all
    exterior renovation plans prior to the commencement of work. These
    plans must be provided by the architect or general contractor. The
    Company reserves the right to require additional renovations prior to
    opening if written approval of renovation plans was not obtained, or the
    actual renovations vary materially from the approved plans. For
    assistance with design concepts, contact the Design/Development
    Department at (973) 496-2525. Renovate to include:**
    a.  The installation of a new exterior finish system such as stucco, synthetic stucco or
        similar to conceal brick façade is required.
    b.  Repair damaged mansard roof section on the commercial building. Pressure
        wash/chemically clean discolored sections.
    c.  Incorporate Company design features into porte cochere columns.
    d.  Paint building exteriors (doors, fascia, soffits, storefronts, railings and stairwells) to
        include sections of the rear suspended walkway from parking lot to guestroom
        building.
    e.  Pressure wash/chemically clean/paint walkways and stairwell steps, including brick
        step walls to eliminate stains and peeling paint.

2.  Replace and/or modify railings. In no event should the railings allow the passage of a 4"
    sphere at any point and/or a 2" sphere at the base of railings. The top rail must rise a
    minimum of 42" from the walkway floor. All railing modifications must be pre-approved
    by the Design and Development Department.

3.  Upgrade swimming pool to include the following:
    a.  Repair/resurface deck to eliminate cracking and damaged areas. Eliminate weeds.
    b.  Paint pool fence.
    c.  Install "FT" markings on the horizontal coping tile.



SEP-14-1999  09:53        FRAN.ADMIN.DEPT.                                          P.04/09

3

Super 8 Motel #8164
Fultondale, AL

## PROPERTY EXTERIOR CONTINUED

4.  Upgrade property landscaping by eliminating overgrowth in existing flowerbeds and install
    seasonal flowers and ground cover.  Emphasis should concentrate around property entrance,
    lobby, guestroom building and pool area. Landscape upgrades must be professionally
    designed and executed.  Renderings, plans and contracts are to be provided to the Design
    and Development Department.  The Company reserves the right to require additional
    landscape upgrades prior to opening if written approval is not obtained, or if the agreed
    upon plans are not fully executed.

## PUBLIC AREAS

1.  Upgrade Front Desk/Lobby area to include the following:
    a.  Replace ceiling tiles to eliminate any that are worn, stained, damaged or discolored.
        Ensure all replacements match existing tiles in style, color and texture.  If
        replacements do not match total replacement will be required.
    b.  Professionally clean carpet however, if carpet grades below a "slight" on the next
        inspection, carpet must be replaced within 30 days.  Company requires cut pile
        carpet or level loop with padding. Carpet must be designed for commercial traffic.
    c.  Professionally clean seating package to eliminate stains.  If stains remain
        replacement will be required.  Sofas and chairs must be commercial grade and fabric
        upholstered.

2.  Upgrade public areas to include the following:
    a.  Deep clean and seal ceramic tile flooring in the public restrooms.
    b.  Replace wallcovering in the Exercise and Meeting rooms.  Company requires either
        vinyl wallcovering or an approved textured finish.
    c.  Professionally clean carpet in Exercise and Meeting rooms, however, if carpet
        grades below a "slight" on the next inspection, carpet must be replaced within 30
        days.  Company requires cut pile carpet or level loop with padding. Carpet must be
        designed for commercial traffic.
    d.  Eliminate trash from Exercise room.
    e.  Paint guest laundry walls to eliminate stains.
    f.  Replace ceiling tiles in Meeting room to eliminate any that are worn, stained,
        damaged or discolored.  Ensure all replacements match existing tiles in style, color
        and texture.  If replacements do not match total replacement will be required.
    g.  Remove worn occasional chairs from meeting room.



SEP-14-1999 09:54   FRAN.ADMIN.DEPT.                              P.05/09

4

Super 8 Motel #8164
Fultondale, AL

---

## PUBLIC AREAS CONTINUED

3.  The owner is responsible to provide facilities to assist the handicapped in accordance
    with Local, State and Federal codes, regulations and ordinances.

4.  Ensure stairwell(s) and corridor(s) are equipped with emergency and exit lighting with a
    backup power source.

5.  Super 8 Motels, Inc. does not allow restaurant or lounge facilities. Restaurant/lounge
    space must be renovated for alternative use, and may not give the appearance of being a
    closed restaurant. Space may be renovated for office space, meeting area, business
    center, vending area, leisure area, library, etc. Plans and colorboards must be
    preapproved by Design and Development Department.

---

## GUESTROOMS/BATHS *(Rooms Inspected): 100, 101, 106, 113, 116, 121, 126, 142, 202, 210, 217, 218, 222, 232, 235, 237, 311, 319, 330, 334, 339, 340, 342.*

1.  Renovate guestrooms to include the following:
    a.  All furniture, finishes and fixtures must coordinate with other room furnishings.
    b.  Replace wallcovering where scuffed, stained or damaged as in rooms #116, #210,
        #339 and #342. Company requires either vinyl wallcovering or an approved
        textured finish.
    c.  Replace worn, damaged or seaming carpet as in rooms #106 and #113. Company
        requires (minimum 26 ounce) cut pile carpet with padding Carpet must also be
        wall to wall.
    d.  Replace mismatched furniture package to include desk chairs as in rooms #116,
        #142, #235 and #339. Refinish furniture package to eliminate scuffs and finish
        loss as in rooms #126, #217, #235 and #342. If deficiencies remain, replacement
        will be required. New casegoods to include a minimum of one credenza/armoire',
        a framed wall mirror, one headboard per bed, and a nightstand is required. A
        minimum of one writing surface is required to consist of either a writing desk or an
        activity table.
    e.  Professionally clean/replace occasional chairs where stained or damaged as in
        rooms #100, #218, #237 and #101. Two chairs (one armed) per room are required.
        Chairs must be fabric covered.
    f.  Replace worn or damaged televisions as in rooms #100, #106, #126 and #222.
        Minimum 20" remote-controlled type TVs are required. Recommend 25" TV
        screens.

SEP-14-1999  09:54        FRAN.ADMIN.DEPT.                                      P.06/09

5

Super 8 Motel #8164
Fultondale, AL

## GUESTROOMS/BATHS CONTINUED

    g.    Replace bedspreads where worn, faded or damaged as in rooms #121, #210 and #218. Each bed must have a quilted bedspread of an appropriate size for the bed.

    h.    Replace draperies. New drapes must have blackout capabilities and one-way draw with baton operation.

    i.    Replace light package where tarnished as in rooms #116 and #311. Replace stained or damaged lampshades as in rooms #106, #121 and #126. One lamp per headboard, one credenza lamp and one activity lamp (floor style recommended) is required in all guestrooms. All wall-mounted lamps must have wire covers or molding, loose cords are not acceptable. Lamp package must be neutral and contemporary (i.e. brass). The use of red or other colors of anodized metal is not acceptable.

    j.    Clean all HVAC grills/filters in all guestrooms.

    k.    Replace bedsets (mattress and boxsprings) to eliminate all that are stained, sagging or have loss of support as in rooms #222, #319 and #339.

2.    Renovate bath areas to include the following:

    a.    Provide wallcovering where missing as in rooms #106 and #339. Company requires either vinyl wallcovering or an approved textured finish.

    b.    Replace non-contemporary vanity lighting as in room #339. A new decorative fixture is required (incandescent or fluorescent lighting is acceptable). Fixture must be mounted over the vanity area and is wall mounted.

    c.    Deep clean and seal ceramic tile flooring. Recaulk as needed.

    d.    Deep clean and seal tub ceramic wall tile where discolored as in rooms #100, #116 and #342. Recaulk tubs where mildewed as in rooms #101, #218 and #334.

    e.    Refinish tubs where damaged and discolored as in rooms #126, #222 and #232.

    f.    Replace plumbing fixtures/trim (sinks or tubs) where tarnished or corroded (faucets, drains rings, etc.) as in room #121.



6

Super 8 Motel #8164
Fultondale, AL

---

HANDWRITTEN OR UNAUTHORIZED REVISIONS TO THIS PUNCHLIST ARE NOT
VALID AND DO NOT BIND THE FRANCHISOR. ANY AND ALL REVISIONS TO THIS
PUNCHLIST MUST BE MADE AND APPROVED BY THE FRANCHISOR'S QUALITY
ASSURANCE DEPARTMENT.

---

This Punchlist identifies items that require action due to meet the Franchisor's standards. The
Franchisor does not warrant that completion of the items on this Punchlist will cause the
converting facility to be in compliance with any applicable federal, state, local codes, ordinances
or regulations. You (and your architect, contractor and engineer, if applicable) are solely
responsible for conforming the Facility to the requirements of federal, state and local codes,
ordinances and regulations that may apply to your site.

This Punchlist has been prepared on the basis of a random sample inspection of the Facility on
the date specified. The owner is responsible for meeting all Franchisor Standards. All repairs,
replacements and improvements must cause the item to meet or exceed the Franchisor's standards
published in the Standards of Operation and Design Manual.

This Punchlist will be subject to revision at the discretion of the Franchisor if the condition of the
facility changes materially or the License (Franchise) Agreement to which this is attached is
executed more than 90 days after the date of the Punchlist. Note, that ordinary wear and tear,
particularly during busy seasons, may result in the need for additional work to meet entry
standards of the Franchisor.

This is not a License (Franchise) Agreement; the Company is not bound by this punchlist unless
and until the Company signs the License (Franchise) Agreement for the inspected facility.

**Note:**   Any item on this Punchlist that is not required prior to the new license agreement will
continue to be evaluated for appearance and condition during any and all Q.A.
evaluations conducted in the interim period.

8164 CO S8



## SCHEDULE C

### February 1998

The System Assessment Fee is equal to three percent (3%) of Gross Room Sales, and is paid into the Advertising and Reservation Fund. The System Assessment Fee is a recurring, non-refundable payment. All or any part of Fund proceeds received during an accounting period need not be disbursed within that accounting period.

If you elect to participate in optional Internet reservation programs, you will be charged a fee per net reservation originated through the Internet, which is currently $2.50, that we may charge in our discretion. We may charge additional fees for creating or modifying the Facility's Website, Webpage or performing other services.

Notwithstanding the above, upon 60 days written notice, after the tenth (10th) anniversary of the Effective Date of this Agreement, and at any later times, System Assessment Fee may be increased, in our sole discretion, on a Chain-wide basis to cover costs (including reasonable direct or indirect overhead costs) related to such services and programs or the cost of additional services or programs.

# EXHIBIT B

## AMENDMENT TO FRANCHISE AGREEMENT

THIS "AMENDMENT" is made and entered into as of this ~~noon~~ 1st day of ~~Oct~~ January, 2006, ("Amendment Date") by and between SUPER 8 MOTELS, INC., a South Dakota corporation ("we", "us" or "our"), DEEPAM, INC., an Alabama corporation ("you", or "your") and Jagdish Patel, Tejash Patel and Mina Patel (the "Guarantors"). This Amendment supplements that certain Franchise Agreement dated **June 30, 1999**, (the "Franchise Agreement"), relating to a license to operate a Super 8® System Unit located at 624 Decatur Highway, Fultondale, AL 35068, designated as Unit **#8164-86021** (the "Facility"). To the extent of any conflict between the Franchise Agreement and this Amendment, the Amendment shall control.

IN CONSIDERATION of the mutual agreements herein contained, and promises herein expressed, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, it is agreed as follows:

1.      Part 1 of Schedule B to the Franchise Agreement is amended as follows:

PART 1:       YOUR OWNERS

| Name | Ownership Percentage | Type of Equity Interest |
| --- | --- | --- |
| Jagdish Patel | 55% | Common Stock |
| Tejash Patel | 30% | Common Stock |
| Mina Patel | 15% | Common Stock |

2.      The parties agree to execute the revised Guaranty Agreement, attached as Exhibit A, in conjunction with this Amendment.

3.      Confidentiality. You acknowledge that the existence of this Amendment and the granting of the benefits herein are strictly confidential between us and you. Part of the consideration received by us for granting the benefits is your obligation to maintain confidentiality about this Amendment and its benefits. Therefore, you agree not to disclose to any person or entity the existence or subject matter of this Amendment, or the benefits granted hereunder, except under compulsion of law or to attorneys or accountants as needed for assistance with representation of or advice to you. Within your organization, information about this Amendment will be disclosed to agents, officers, affiliates and contractors on a "need to know" basis only. If you violate this confidentiality obligation, no further benefits will be available from that time and thereafter, to the extent that the benefits have not then been fully utilized upon written notice from us.

4.      Release. You, on behalf of yourself, your partners, officers, employees, directors, shareholders, and Guarantor, and the successors and assigns of all of them, hereby release and holds harmless us, our officers, employees, agents, directors, shareholders, and the successors and assigns of all of them from any and all claims and causes of action whatsoever arising prior to and through

the date of this Amendment relating to the offer, sale, negotiation, default, and/or performance of the Franchise Agreement for the Facility.

5.   Except as expressly stated in this Amendment, no further additions, modification or deletions to the Franchise Agreement or the Guaranty Agreement are intended by the parties or made by this Amendment.

6.   Execution in Counterparts.  To facilitate execution of this Agreement by geographically separated parties, this Agreement, and all other agreements and documents to be executed in connection herewith may be executed in as many counterparts as may be required; and it shall not be necessary that the signatures on behalf of each party appear on each counterpart; but it shall be sufficient that the signature on behalf of each party appear on one or more of the counterparts.  All counterparts shall collectively constitute a single agreement.  It shall not be necessary in making proof of this Agreement to produce or account for more than a number of counterparts containing the respective signatures on behalf of all the parties hereto. All facsimile executions shall be treated as originals for all purposes.

Remainder of page intentionally left blank

OCT-26-2005 02:57P FROM:                                   TO:916029261473          P:8

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date indicated above:

SUPER 8 MOTELS, INC.

Attest: _____   By: _____
(Assistant) Secretary                   Richard M. Saltzman
                                        Vice President
                                        Franchise Administration

DEEPAM, INC.

Attest: _____   By: _____
                                        Jagdish Patel

GUARANTORS:

Witness: _____   By: _____
                                        Jagdish Patel

Witness: _____   By: _____
                                        Tejash Patel

Witness: _____   By: _____
                                        Mina Patel

# **EXHIBIT C**

OCT-26-2005 02:58P FROM: TO:916029261473 P:9

## EXHIBIT A

### GUARANTY

To induce Super 8 Motels, Inc., its successors and assigns ("you") to sign the Amendment to the Franchise Agreement (the "Agreement") with the party named as the "Franchisee," to which this Guaranty is attached, the undersigned, jointly and severally ("we," "our" or "us"), irrevocably and unconditionally (i) warrant to you that Franchisee's representations and warranties in the Agreement are true and correct as stated, and (ii) guaranty that Franchisee's obligations under the Agreement, including any amendments, will be punctually paid and performed.

Upon default by Franchisee and notice from you we will immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement. Without affecting our obligations under this Guaranty, you may without notice to us extend, modify or release any indebtedness or obligation of Franchisee, or settle, adjust or compromise any claims against Franchisee. We waive notice of amendment of the Agreement. We acknowledge that Section 17 of the Agreement, including Remedies, Venue and Dispute Resolution, and WAIVER OF JURY TRIAL, applies to this Guaranty.

Upon the death of an individual guarantor, the estate of the guarantor will be bound by this Guaranty for obligations of Franchisee to you existing at the time of death, and the obligations of all other guarantors will continue in full force and effect.

This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument.

IN WITNESS WHEREOF, each of us has signed this Guaranty effective as of the date of the Agreement.

WITNESSES:                                              GUARANTORS:

_____          _____ (Seal)
                                                              Jagdish Patel

_____          _____ (Seal)
                                                              Tejash Patel

_____          _____ (Seal)
                                                              Mina Patel

# EXHIBIT D



Wyndham Hotel Group
Contracts Administration
22 Sylvan Way
Parsippany, NJ 07054
973 753 6000 Phone
800 880 9445 Fax

May 5, 2011

**VIA 2-DAY DELIVERY METHOD**

Mr. Tejash Patel
Deepam, Inc.
624 Decatur Highway
Birmingham, AL 35068

RE: **ACKNOWLEDGMENT OF TEMPORARY CLOSING** relative to the Super 8®
System Unit #8164-86021-4 located in Fultondale, AL (the "Facility")

Dear Mr. Patel:

Super 8 Worldwide, Inc., successor in interest to Super 8 Motels, Inc. ("we," "our" or "us") has
been informed that Deepam, Inc. ("you" or "your") has requested that the Facility be temporarily
closed due to storm damage at the Facility. Therefore, this letter will serve as an
Acknowledgement of Temporary Closing of the Facility from May 3, 2011 through May 3, 2012
(the "Closing Period"), provided that you agree to the terms of this letter. We understand that the
Facility is to reopen on May 4, 2012. If you are unable to open the Facility by May 4, 2012, it is
imperative that you contact us prior to May 4, 2012, to advise us of when the Facility will
reopen.

You will continue to file Monthly Franchise Reports during the Closing Period and will pay
Continuing Fees, to the extent the Facility has any Gross Room Revenues during the Closing
Period, together with those fees which are not based on Gross Room Revenues, if any. During this
Closing Period, we will not take reservations for arrivals unless you notify us in writing that the
Facility will be open during this time. In addition, we will reach out to any guests with reservations
within the Closing Period to refer them to another Facility. The Facility shall be secured from
unauthorized entry and use during the Closing Period, and the location of the nearest open Super 8
System Facility will be displayed prominently on the front door of the Facility. We may indicate
the months during which the Facility is open and/or closed in the System Directory and other
advertising or marketing materials. No quality assurance inspections will be conducted during the
Closing Period.

If you have any questions with respect to the filing of Monthly Franchise Reports and the
payment of Recurring Fees and other charges during the Closing Period, please contact Charlene
Martin, Senior Financial Services Manager, at (973) 753-7602.

     

    

Mr. Tejash Patel
May 5, 2011
Page 2


Please acknowledge your agreement to these terms by signing the acknowledgement below and
returning this letter to me.

Sincerely,

Suzanne Fenimore
Director
Contracts Compliance, Legal


cc:     GE Commercial Finance (Lender)
        Jagdish Patel (Guarantor)
        Mina Patel (Guarantor)
        John Valletta
        Charlene Martin
        Valerie Capers Workman


**Agreed:**                               **Receipt Acknowledged:**
**Licensee**                              **Super 8 Motels, Inc.**


By:_____         _____
Name: _____        Suzanne Fenimore
Title: _____       Director
                                          Contracts Compliance, Legal

UPS CampusShip: Shipment Receipt                                                      Page 1 of 1



**Shipment Receipt**

| Transaction Date: | 05 May 2011 |
| Tracking Number: | 1Z22445X0291285258 |

**1  Address Information**

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Deepam Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Tejash Patel | Elena Danishevsky | Elena Danishevsky |
| Super 8 | 22 Sylvan Way | 22 Sylvan Way |
| 624 Decatur Hwy. | Parsippany NJ 07054 | Parsippany NJ 07054 |
| FULTONDALE AL 350682809 | Telephone:973-753-7236 | Telephone:973-753-7236 |
| Telephone:(205) 841-2200 | | |

**2  Package Information**

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1 | Letter | UPS Letter | | Reference # 1 - 006-5072 |

**3  UPS Shipping Service and Shipping Options**

Service:
UPS 2nd Day Air

Guaranteed By: [1]
End of Day Monday, 5/09/2011

| Shipping Fees Subtotal: | 14.55 USD |
| Transportation | 12.65 USD |
| Fuel Surcharge | 1.90 USD |

**4  Payment Information**

| Bill Shipping Charges to: | Shipper's Account 22445X |
|---|---|

| Daily rates were applied to this shipment | |
| Total Charged: | 14.55 USD |

Note: Your invoice may vary from the displayed reference rates

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

Close Window

UPS CampusShip: Shipment Receipt

**Shipment Receipt**



Transaction Date:                 05 May 2011
Tracking Number:              1Z22445X0294708065

**1  Address Information**

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| GE Commercial Finance | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| GE Commercial Finance | Elena Danishevsky | Elena Danishevsky |
| 635 Maryville Centre Drive | 22 Sylvan Way | 22 Sylvan Way |
| Suite 120 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| SAINT LOUIS MO 631410007 | Telephone:973-753-7236 | Telephone:973-753-7236 |

**2  Package Information**

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1 | Letter | UPS Letter | | Reference # 1 - 006-5072 |

**3  UPS Shipping Service and Shipping Options**

Service:
UPS 2nd Day Air

Guaranteed By: [1]
End of Day Monday, 5/09/2011

| Shipping Fees Subtotal: | 14.55 USD |
|---|---|
| Transportation | 12.65 USD |
| Fuel Surcharge | 1.90 USD |

**4  Payment Information**

| Bill Shipping Charges to: | Shipper's Account 22445X |
|---|---|

| Daily rates were applied to this shipment | |
|---|---|
| **Total Charged:** | 14.55 USD |

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

Close Window

# **<u>EXHIBIT E</u>**



**HOTEL GROUP**
Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 • fax (800) 880-9445
www.wyndhamworldwide.com

September 4, 2012

<u>**VIA 2 DAY DELIVERY METHOD**</u>

Mr. Paresh Patel
Deepam, Inc.
1013 W. Franklin Street
Quincy, FL 82351

RE:    **NOTICE OF TERMINATION** of the License Agreement for Super 8® System Unit #8164-86021-04
located in Fultondale, AL 35068 (the "Facility")

Dear Mr. Patel:

Super 8 Worldwide, Inc., successor in interest to Super 8 Motels, Inc. ("we" or "us") has received photographs on June 29, 2012 (the "Termination Date") verifying that Deepam, Inc. ("you" or "your") has not re-opened the Facility. On May 5, 2011 we forwarded to you an Acknowledgement of Temporary Closing Notice granting you permission to close the Facility from May 3, 2011 through May 3, 2012 (the "Closing Period"), provided that you agree to the terms of the letter and reopened the Facility on May 4, 2012. On November 8, 2011, we responded to your request for an extension of the closing for the Facility stating that we were unable to extend the closure. Accordingly, your License Agreement dated June 30, 1999 (the "Agreement") has terminated on the Termination Date.

The Agreement requires you to perform certain post-termination obligations. In addition to other obligations specified in the Agreement, by no later than ten (10) days from the date of this Notice, you must (a) remove all signage and other items bearing the Super 8 Marks; (b) perform all post-termination obligations specified in the Systems Standards Manual; (c) change all signs, billboards, and listings in telephone directories, travel guides, hotel indexes and similar materials in which the Facility is identified as a Super 8 facility; and (d) remove the Super 8 Marks from any advertising or promotional activities on, around or directed towards the Facility, including any web sites, web pages or search engines. You must cooperate fully with us regarding any post-termination inspections by us to verify that the Facility has been properly de-identified. You must immediately return to us all training documents, operating manuals and other proprietary material.

Because the Agreement has terminated prematurely, you must pay any outstanding Recurring Fees and any other fees and charges through the Termination Date. We estimate that, as of September 4, 2012, you owe us $151,752.51 in such fees and charges. Please pay us this amount within fourteen (14) days. Please consider this letter to be a notice and demand for payment under any Guaranty of the Agreement, directed to your Guarantors.



HOTEL GROUP

      

        

Mr. Paresh Patel
September 4, 2012
Page Two

Please know that, because the Agreement has terminated, you also have lost your right to continue to use the seamless interface version of your property management system. You must now make your own arrangements with the software vendor for a new license to use the property management system. If the Facility has WynGuest system installed, please be advised that due to the termination you will have limited functionality from the system. Should you wish to continue using an independent version of the software and are interested in a minimum continuation agreement of 24 months, please contact Sabre at 877-520-3646, an authorized reseller of the WynGuest product. If your property is planning to migrate to another property management system in less than 24 months, please contact your provider to expedite the installation. If you would like to inquire about the data maintained in the system, please contact Scott Robertson at 506-631-2104 to obtain reporting of that data.

Should you have any questions regarding this matter, please contact Charlene Martin, Senior Manager of Settlements, at (973) 753-7602.

Sincerely,

Valerie Capers Workman
Vice President
Compliance & Government Relations

Enclosure

cc: Jagdish Patel (Guarantor)
    Tejash Patel (Guarantor)
    Mina Patel (Guarantor)
    General Electric Capital Corp. ~ 635 Maryville Centre Drive, Ste 120, St. Louis, MO 63141(Lender)
    John Valletta
    Larry Geer
    Charlene Martin

Report Date : 04-SEP-12

ITEMIZED STATEMENT
-------------------

As of Date (DD-MMM-YYYY):  04-SEP-2012
Customer No             :  08164-86021-04-SUP
Category Set            :
Category Group          :
Group No                :
Bankruptcy              :  No Bankruptcy Sites
Disputed                :  No
Finance Charges Included:  Yes

Page 1 of 12

Report Date : 04-SEP-12

ITEMIZED STATEMENT
-------------------

Customer No : 08164-86021-04-SUP
Address :    624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:  04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| APR-2009 | 10346305 | 16-APR-09 | GUEST SRVCS TRA | | 0.00 | 0.00 | 7.97 | 7.97 |
| | 26110083 | 22-APR-09 | WYNREWARDS 5% | | 0.00 | 0.00 | 46.73 | 46.73 |
| | 2221990 | 24-APR-09 | GDS & INTERNET | | 0.00 | 0.00 | 4.70 | 4.70 |
| | 40949034 | 30-APR-09 | 5066A-DIRECWAY | | 0.00 | 0.00 | 27.50 | 27.50 |
| | 40951089 | 30-APR-09 | 5033A-HSS SOFTW | | 0.00 | 0.00 | 20.30 | 20.30 |
| | 40966975 | 30-APR-09 | Actual-1215A-AD | | 0.00 | 0.00 | 291.55 | 291.55 |
| | 40966186 | 30-APR-09 | Actual-1000A-RO | | 0.00 | 0.00 | 485.96 | 485.96 |
| | | | Sub Total | | 0.00 | 0.00 | 884.71 | 884.71 |
| MAY-2009 | 10352583 | 07-MAY-09 | GUEST SATISFACT | | 0.00 | 0.00 | 5.50 | 5.50 |
| | 10351494 | 07-MAY-09 | GUEST SRVCS TRA | | 0.00 | 0.00 | 16.65 | 16.65 |
| | 10351493 | 07-MAY-09 | GUEST SATISFACT | | 0.00 | 0.00 | 5.50 | 5.50 |
| | 10352584 | 07-MAY-09 | GUEST SRVCS TRA | | 0.00 | 0.00 | 16.65 | 16.65 |
| | 10354150 | 21-MAY-09 | GUEST SATISFACT | | 0.00 | 0.00 | 7.74 | 7.74 |
| | 10354149 | 21-MAY-09 | GUEST SRVCS TRA | | 0.00 | 0.00 | 15.15 | 15.15 |
| | 1005201 | 22-MAY-09 | GDS & INTERNET | | 0.00 | 0.00 | 3.32 | 3.32 |
| | 26111918 | 22-MAY-09 | WYNREWARDS 5% | | 0.00 | 0.00 | 33.33 | 33.33 |
| | 41002742 | 31-MAY-09 | Actual-1000A-RO | | 0.00 | 0.00 | 349.80 | 349.80 |
| | 40991950 | 31-MAY-09 | 5033A-HSS SOFTW | | 0.00 | 0.00 | 19.37 | 19.37 |
| | 40989925 | 31-MAY-09 | 5066A-DIRECWAY | | 0.00 | 0.00 | 25.03 | 25.03 |
| | 41001875 | 31-MAY-09 | Actual-1215A-AD | | 0.00 | 0.00 | 209.87 | 209.87 |
| | | | Sub Total | | 0.00 | 0.00 | 707.91 | 707.91 |
| JUN-2009 | 26116640 | 22-JUN-09 | WYNREWARDS 5% | | 0.00 | 0.00 | 35.45 | 35.45 |
| | 41017967 | 30-JUN-09 | 5033A-HSS SOFTW | | 0.00 | 0.00 | 17.39 | 17.39 |
| | 41019050 | 30-JUN-09 | 5066A-DIRECWAY | | 0.00 | 0.00 | 22.47 | 22.47 |
| | 41041609 | 30-JUN-09 | Actual-1000A-RO | | 0.00 | 0.00 | 348.34 | 348.34 |
| | 41039137 | 30-JUN-09 | Actual-1215A-AD | | 0.00 | 0.00 | 209.00 | 209.00 |
| | | | Sub Total | | 0.00 | 0.00 | 632.65 | 632.65 |

Report Date : 04-SEP-12

ITEMIZED STATEMENT
-----------------------

Customer No : 08164-86021-04-SUP
Address :     624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:   04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| JUL-2009 | 30326016 | 16-JUL-09 | Q/A REINSPECTIO | | 0.00 | 0.00 | 204.00 | 204.00 |
| | 26118887 | 22-JUL-09 | WYNREWARDS 5% | | 0.00 | 0.00 | 27.66 | 27.66 |
| | 10374666 | 23-JUL-09 | GUEST SATISFACT | | 0.00 | 0.00 | 6.15 | 6.15 |
| | 41069079 | 31-JUL-09 | Actual-1215A-AD | | 0.00 | 0.00 | 183.16 | 183.16 |
| | 41057848 | 31-JUL-09 | 5033A-HSS SOFTW | | 0.00 | 0.00 | 15.40 | 15.40 |
| | 41068224 | 31-JUL-09 | Actual-1000A-RO | | 0.00 | 0.00 | 305.29 | 305.29 |
| | 41056513 | 31-JUL-09 | 5066A-DIRECWAY | | 0.00 | 0.00 | 19.90 | 19.90 |
| | | | Sub Total | | 0.00 | 0.00 | 761.56 | 761.56 |
| AUG-2009 | 26123914 | 22-AUG-09 | WYNREWARDS 5% | | 0.00 | 0.00 | 19.54 | 19.54 |
| | 41087484 | 31-AUG-09 | 5066A-DIRECWAY | | 0.00 | 0.00 | 17.43 | 17.43 |
| | 41099288 | 31-AUG-09 | Actual-1000A-RO | | 0.00 | 0.00 | 279.69 | 279.69 |
| | 41103682 | 31-AUG-09 | Actual-1215A-AD | | 0.00 | 0.00 | 167.80 | 167.80 |
| | 41087375 | 31-AUG-09 | 5033A-HSS SOFTW | | 0.00 | 0.00 | 13.49 | 13.49 |
| | | | Sub Total | | 0.00 | 0.00 | 497.95 | 497.95 |
| SEP-2009 | 10401535 | 10-SEP-09 | GUEST SRVCS TRA | | 0.00 | 0.00 | 10.55 | 10.55 |
| | 10401536 | 10-SEP-09 | GUEST SATISFACT | | 0.00 | 0.00 | 5.71 | 5.71 |
| | 26128827 | 22-SEP-09 | WYNREWARDS 5% | | 0.00 | 0.00 | 28.45 | 28.45 |
| | 41118256 | 30-SEP-09 | 5033A-HSS SOFTW | | 0.00 | 0.00 | 11.50 | 11.50 |
| | 41141780 | 30-SEP-09 | Actual-1000A-AD | | 0.00 | 0.00 | 190.68 | 190.68 |
| | 41143472 | 30-SEP-09 | Actual-1215A-AD | | 0.00 | 0.00 | 114.39 | 114.39 |
| | 41117968 | 30-SEP-09 | 5066A-DIRECWAY | | 0.00 | 0.00 | 14.86 | 14.86 |
| | | | Sub Total | | 0.00 | 0.00 | 376.14 | 376.14 |
| OCT-2009 | 26133134 | 22-OCT-09 | WYNREWARDS 5% | | 0.00 | 0.00 | 17.86 | 17.86 |
| | 41171859 | 31-OCT-09 | Actual-1215A-AD | | 0.00 | 0.00 | 116.36 | 116.36 |
| | 41155995 | 31-OCT-09 | 5066A-DIRECWAY | | 0.00 | 0.00 | 12.39 | 12.39 |
| | 41170345 | 31-OCT-09 | Actual-1000A-RO | | 0.00 | 0.00 | 193.94 | 193.94 |
| | 41158234 | 31-OCT-09 | 5033A-HSS SOFTW | | 0.00 | 0.00 | 9.59 | 9.59 |

```
                                    Report Date : 04-SEP-12

                        ITEMIZED STATEMENT
                        ------------------


   Customer No :   08164-86021-04-SUP
   Address :       624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
   As of Date:     04-SEP 2012

Mon-Year  Invoice No    Invoice Date  Description   Accrued              Amount                              Total
                                                          Billing        Tax      FinanceCharges
----------  ------------  ------------  -----------  -------  ------------  ------------  ------------  ------------

                                                      ============  ============  ============  ============
                                          Sub Total        0.00          0.00        350.14        350.14
                                                      ============  ============  ============  ============

NOV-2009  30354042       12-NOV-09     Q/A REINSPECTIO        0.00          0.00        112.50        112.50
          10426980       19-NOV-09     GUEST SATISFACT        0.00          0.00          6.26          6.26
          10426978       19-NOV-09     GUEST SRVCS TRA        0.00          0.00          5.95          5.95
          26134155       22-NOV-09     WYNREWARDS 5%          0.00          0.00         18.81         18.81
          10431629       25-NOV-09     GUEST SRVCS PRO        0.00          0.00          3.57          3.57
          41190875       30-NOV-09     5033A-HSS SOFTW        0.00          0.00          7.61          7.61
          41188249       30-NOV-09     5066A-DIRECWAY         0.00          0.00          9.83          9.83
          41206132       30-NOV-09     Actual-1000A-RO        0.00          0.00        138.78        138.78
          41207549       30-NOV-09     Actual-1215A-AD        0.00          0.00         83.26         83.26

                                                      ============  ============  ============  ============
                                          Sub Total        0.00          0.00        386.57        386.57
                                                      ============  ============  ============  ============

DEC-2009  26138610       22-DEC-09     WYNREWARDS 5%          0.00          0.00          4.43          4.43
          10439754       30-DEC-09     GUEST SRVCS TRA        0.00          0.00          4.40          4.40
          10439753       30-DEC-09     GUEST SATISFACT        0.00          0.00          2.42          2.42
          41224578       31-DEC-09     5033A-HSS SOFTW        0.00          0.00          5.63          5.63
          41240641       31-DEC-09     Actual-1215A-AD        0.00          0.00         53.90         53.90
          41238938       31-DEC-09     Actual-1000A-RO        0.00          0.00         89.82         89.82
          30384905       31-DEC-09     DEC-09 PRORATE         0.00          0.00          7.49          7.49

                                                      ============  ============  ============  ============
                                          Sub Total        0.00          0.00        168.09        168.09
                                                      ============  ============  ============  ============

JAN-2010  30389603       14-JAN-10     Q/A REINSPECTIO        0.00          0.00         66.00         66.00
          26143060       22-JAN-10     WYNREWARDS 5%          0.00          0.00          3.62          3.62
          30396659       31-JAN-10     DIRECWAY               0.00          0.00          4.96          4.96
          41256420       31-JAN-10     5033A-HSS SOFTW        0.00          0.00          3.84          3.84
          41271483       31-JAN-10     Actual-1000A-RO        0.00          0.00         73.40         73.40
          41273188       31-JAN-10     Actual-1215A-AD        0.00          0.00         44.04         44.04


                              Page 4 of 12
```

Report Date : 04-SEP-12

ITEMIZED STATEMENT
-------------------

Customer No :  08164-86021-04-SUP
Address :      624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:    04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 0.00 | 0.00 | 195.86 | 195.86 |
| FEB-2010 | 10445652 | 10-FEB-10 | GUEST SRVCS TRA | | 0.00 | 0.00 | 3.00 | 3.00 |
| | 26146363 | 22-FEB-10 | WYNREWARDS 5% | | 0.00 | 0.00 | 2.17 | 2.17 |
| | 41312209 | 28-FEB-10 | Actual-1000A-RO | | 0.00 | 0.00 | 42.91 | 42.91 |
| | 41313200 | 28-FEB-10 | Actual-1215A-AD | | 0.00 | 0.00 | 25.75 | 25.75 |
| | | | | Sub Total | 0.00 | 0.00 | 73.83 | 73.83 |
| MAR-2010 | 30415046 | 12-MAR-10 | Q/A REINSPECTIO | | 0.00 | 0.00 | 24.65 | 24.65 |
| | | | | Sub Total | 0.00 | 0.00 | 24.65 | 24.65 |
| APR-2010 | 41376860 | 30-APR-10 | Actual-1000A-RO | | 16.67 | 0.00 | 0.88 | 17.55 |
| | | | | Sub Total | 16.67 | 0.00 | 0.88 | 17.55 |
| MAY-2010 | 26155456 | 22-MAY-10 | WYNREWARDS 5% | | 360.82 | 0.00 | 133.56 | 494.38 |
| | 41390464 | 31-MAY-10 | 5033A-HSS SOFTW | | 116.21 | 11.62 | 48.64 | 176.47 |
| | 30443440 | 31-MAY-10 | DIRECWAY | | 160.00 | 16.00 | 66.99 | 242.99 |
| | | | | Sub Total | 637.03 | 27.62 | 249.19 | 913.84 |
| JUN-2010 | 30448560 | 04-JUN-10 | OTA Credit | | (10.87) | 0.00 | 0.00 | (10.87) |
| | 26157532 | 22-JUN-10 | WYNREWARDS 5% | | 468.00 | 0.00 | 170.77 | 638.77 |
| | 30458294 | 30-JUN-10 | DIRECWAY | | 160.00 | 16.00 | 64.26 | 240.26 |
| | 41450350 | 30-JUN-10 | Actual-1215A-AD | | 1940.27 | 0.00 | 708.00 | 2648.27 |
| | 41449505 | 30-JUN-10 | Actual-1000A-RO | | 3233.79 | 0.00 | 1180.13 | 4413.92 |

Page 5 of 12

Report Date : 04-SEP-12

ITEMIZED STATEMENT
- - - - - - - - - - - - - - - - - -

Customer No :  08164-86021-04-SUP
Address :      624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:    04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | 41432421 | 30-JUN-10 | 5033A-HSS SOFTW | | 116.21 | 11.62 | 46.66 | 174.49 |
| | | | | Sub Total | 5907.40 | 27.62 | 2169.82 | 8104.84 |
| JUL-2010 | 30464228 | 14-JUL-10 | SUPER8 TRAINING | | 185.00 | 18.50 | 74.20 | 277.70 |
| | 26160421 | 22-JUL-10 | WYNREWARDS 5% | | 173.26 | 0.00 | 60.62 | 233.88 |
| | 41478265 | 31-JUL-10 | Actual-1215A-AD | | 1907.72 | 0.00 | 665.44 | 2573.16 |
| | 30471549 | 31-JUL-10 | DIRECWAY | | 160.00 | 16.00 | 61.53 | 237.53 |
| | 41476169 | 31-JUL-10 | Actual-1000A-RO | | 3179.54 | 0.00 | 1108.95 | 4288.49 |
| | | | | Sub Total | 5605.52 | 34.50 | 1970.74 | 7610.76 |
| AUG-2010 | 10490469 | 26-AUG-10 | GUEST SRVCS TRA | | 160.00 | 0.00 | 53.52 | 213.52 |
| | 10490471 | 26-AUG-10 | GUEST SATISFACT | | 25.00 | 0.00 | 8.43 | 33.43 |
| | 30482014 | 31-AUG-10 | DIRECWAY | | 160.00 | 16.00 | 58.89 | 234.89 |
| | 41511278 | 31-AUG-10 | Actual-1000A-RO | | 2932.57 | 0.00 | 980.90 | 3913.47 |
| | 41512930 | 31-AUG-10 | Actual-1215A-AD | | 1759.54 | 0.00 | 588.50 | 2348.04 |
| | | | | Sub Total | 5037.11 | 16.00 | 1690.24 | 6743.35 |
| SEP-2010 | 41539500 | 30-SEP-10 | Actual-1215A-AD | | 1446.81 | 0.00 | 461.58 | 1908.39 |
| | 30493532 | 30-SEP-10 | DIRECWAY | | 160.00 | 16.00 | 56.16 | 232.16 |
| | 41538385 | 30-SEP-10 | Actual-1000A-RO | | 2411.36 | 0.00 | 769.26 | 3180.62 |
| | | | | Sub Total | 4018.17 | 16.00 | 1287.00 | 5321.17 |
| OCT-2010 | 30495918 | 06-OCT-10 | Q/A REINSPECTIO | | 1700.00 | 0.00 | 542.30 | 2242.30 |
| | 26170262 | 22-OCT-10 | WYNREWARDS 5% | | 2.20 | 0.00 | 0.60 | 2.80 |
| | 41574911 | 31-OCT-10 | Actual-1215A-AD | | 1727.72 | 0.00 | 525.26 | 2252.98 |
| | 41576142 | 31-OCT-10 | Actual-1000A-RO | | 2879.53 | 0.00 | 875.32 | 3754.85 |
| | 30502946 | 31-OCT-10 | DIRECWAY | | 160.00 | 16.00 | 53.52 | 229.52 |

ITEMIZED STATEMENT
------------------------

```
Customer No :  08164-86021-04-SUP
Address    :   624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:    04-SEP-2012
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
|          |           |              |             | Sub Total | 6469.45 | 16.00 | 1997.00 | 8482.45 |
| NOV-2010 | 26174171 | 22-NOV-10 | WYNREWARDS 5% | | 76.70 | 0.00 | 22.13 | 98.83 |
|          | 41585861 | 30-NOV-10 | 5066A-DIRECWAY | | 160.00 | 16.00 | 50.79 | 226.79 |
|          | 41607131 | 30-NOV-10 | Actual-1215A-AD | | 1343.65 | 0.00 | 387.64 | 1731.29 |
|          | 41608150 | 30-NOV-10 | Actual-1000A-RO | | 2239.41 | 0.00 | 646.05 | 2885.46 |
|          |          |          |         | Sub Total | 3819.76 | 16.00 | 1106.61 | 4942.37 |
| DEC-2010 | 26175976 | 22-DEC-10 | WYNREWARDS 5% | | 2.82 | 0.00 | 0.72 | 3.54 |
|          | 41641449 | 31-DEC-10 | Actual-1000A-RO | | 2346.25 | 0.00 | 638.62 | 2984.87 |
|          | 41639912 | 31-DEC-10 | Actual-1215A-AD | | 1407.75 | 0.00 | 383.19 | 1790.94 |
|          | 30525861 | 31-DEC-10 | VSAT FEB-2010 | | 160.00 | 16.00 | 49.56 | 225.56 |
|          | 30525862 | 31-DEC-10 | VSAT MAR-2010 | | 160.00 | 16.00 | 49.56 | 225.56 |
|          | 41626109 | 31-DEC-10 | 5066A-DIRECWAY | | 160.00 | 16.00 | 48.07 | 224.07 |
|          |          |          |         | Sub Total | 4236.82 | 48.00 | 1169.72 | 5454.54 |
| JAN-2011 | 10518347 | 05-JAN-11 | GUEST SATISFACT | | 40.00 | 0.00 | 10.92 | 50.92 |
|          | 10518348 | 05-JAN-11 | GUEST SRVCS TRA | | 160.00 | 0.00 | 43.68 | 203.68 |
|          | 26181566 | 22-JAN-11 | WYNREWARDS 5% | | 4.60 | 0.00 | 1.24 | 5.84 |
|          | 41674262 | 31-JAN-11 | Actual-1215A-AD | | 1442.72 | 0.00 | 384.04 | 1826.76 |
|          | 41677676 | 31-JAN-11 | Actual-1000A-RO | | 2404.54 | 0.00 | 640.12 | 3044.66 |
|          | 41659104 | 31-JAN-11 | 5066A-DIRECWAY | | 160.00 | 16.00 | 46.83 | 222.83 |
|          |          |          |         | Sub Total | 4211.86 | 16.00 | 1126.83 | 5354.69 |
| FEB-2011 | 30538928 | 14-FEB-11 | 2011 REG'L TRAI | | 499.00 | 0.00 | 129.24 | 628.24 |
|          | 26182000 | 22-FEB-11 | WYNREWARDS 5% | | 65.70 | 0.00 | 16.79 | 82.49 |
|          | 41705903 | 28-FEB-11 | Actual-1000A-RO | | 2976.38 | 0.00 | 750.04 | 3726.42 |

Report Date : 04-SEP-12

ITEMIZED STATEMENT
--------------------

Customer No :   08164-86021-04-SUP
Address    :   624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:   04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
|          | 41704113   | 28-FEB-11    | Actual-1215A-AD    |     | 1785.83 | 0.00  | 450.04  | 2235.87 |
|          | 41693198   | 28-FEB-11    | 5066A-DIRECWAY     |     | 160.00  | 16.00 | 44.37   | 220.37  |
|          |            |              | Sub Total          |     | 5486.91 | 16.00 | 1390.48 | 6893.39 |
| MAR-2011 | 26186646   | 22-MAR-11    | WYNREWARDS 5%      |     | 8.49    | 0.00  | 2.04    | 10.53   |
|          | 41740528   | 31-MAR-11    | Accrual-1215A-A    | *   | 1733.85 | 0.00  | 410.02  | 2143.87 |
|          | 41739907   | 31-MAR-11    | Accrual-1000A-R    | *   | 2889.75 | 0.00  | 683.43  | 3573.18 |
|          | 41725871   | 31-MAR-11    | 5066A-DIRECWAY     |     | 160.00  | 16.00 | 41.64   | 217.64  |
|          |            |              | Sub Total          |     | 4792.09 | 16.00 | 1137.13 | 5945.22 |
| APR-2011 | 26191869   | 22-APR-11    | WYNREWARDS 5%      |     | 2.35    | 0.00  | 0.58    | 2.93    |
|          | 41755683   | 30-APR-11    | 5066A-DIRECWAY     |     | 160.00  | 16.00 | 39.00   | 215.00  |
|          | 41755912   | 30-APR-11    | 5625A-PRM SUPPO    |     | 98.40   | 0.00  | 21.86   | 120.26  |
|          | 41772962   | 30-APR-11    | Accrual-1000A-R    | *   | 2637.30 | 0.00  | 584.18  | 3221.48 |
|          | 41773474   | 30-APR-11    | Accrual-1215A-A    | *   | 1582.38 | 0.00  | 350.54  | 1932.92 |
|          |            |              | Sub Total          |     | 4480.43 | 16.00 | 996.16  | 5492.59 |
| MAY-2011 | 30573625   | 05-MAY-11    | 2010 CONF CREDI    |     | (21.00) | 0.00  | 0.00    | (21.00) |
|          | 41784248   | 31-MAY-11    | 5625A-PRM SUPPO    |     | 98.40   | 0.00  | 20.33   | 118.73  |
|          | 41802981   | 31-MAY-11    | Actual-1000A-RO    |     | 0.00    | 0.00  | 175.84  | 175.84  |
|          | 41801984   | 31-MAY-11    | Actual-1215A-AD    |     | 0.00    | 0.00  | 105.51  | 105.51  |
|          | 41789161   | 31-MAY-11    | 5066A-DIRECWAY     |     | 160.00  | 16.00 | 36.27   | 212.27  |
|          |            |              | Sub Total          |     | 237.40  | 16.00 | 337.95  | 591.35  |
| JUN-2011 | 41832951   | 30-JUN-11    | Accrual-1215A-A    | *   | 1949.22 | 0.00  | 372.28  | 2321.50 |
|          | 41813371   | 30-JUN-11    | 5066A-DIRECWAY     |     | 160.00  | 16.00 | 33.63   | 209.63  |
|          | 41813636   | 30-JUN-11    | 5625A-PRM SUPPO    |     | 98.40   | 0.00  | 18.85   | 117.25  |

Report Date : 04-SEP-12

ITEMIZED STATEMENT
-------------------

Customer No :   08164-86021-04-SUP
Address :       624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:     04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
|          | 41832638 | 30-JUN-11 | Accrual-1000A-R | * | 3248.70 | 0.00 | 620.47 | 3869.17 |
|          |          |           | Sub Total |   | 5456.32 | 16.00 | 1045.23 | 6517.55 |
| JUL-2011 | 30601246 | 06-JUL-11 | LIMITED AUDIT |   | 1000.00 | 0.00 | 188.00 | 1188.00 |
|          | 41848536 | 31-JUL-11 | 5066A-DIRECWAY |   | 160.00 | 16.00 | 30.90 | 206.90 |
|          | 41866957 | 31-JUL-11 | Accrual-1215A-A | * | 1900.02 | 0.00 | 333.45 | 2233.47 |
|          | 41864828 | 31-JUL-11 | Accrual-1000A-R | * | 3166.70 | 0.00 | 555.73 | 3722.43 |
|          | 41849558 | 31-JUL-11 | 5625A-PRM SUPPO |   | 98.40 | 0.00 | 17.32 | 115.72 |
|          |          |           | Sub Total |   | 6325.12 | 16.00 | 1125.40 | 7466.52 |
| AUG-2011 | 41884805 | 31-AUG-11 | 5066A-DIRECWAY |   | 160.00 | 16.00 | 28.17 | 204.17 |
|          | 41897704 | 31-AUG-11 | Accrual-1000A-R | * | 2910.10 | 0.00 | 465.64 | 3375.74 |
|          | 41883415 | 31-AUG-11 | 5625A-PRM SUPPO |   | 98.40 | 0.00 | 15.79 | 114.19 |
|          | 41896974 | 31-AUG-11 | Accrual-1215A-A | * | 1746.06 | 0.00 | 279.35 | 2025.41 |
|          |          |           | Sub Total |   | 4914.56 | 16.00 | 788.95 | 5719.51 |
| SEP-2011 | 30621719 | 15-SEP-11 | SUPER8 TRAINING |   | 150.00 | 15.00 | 25.19 | 190.19 |
|          | 30629491 | 28-SEP-11 | GLOBAL CONFEREN |   | 999.00 | 0.00 | 60.94 | 1059.94 |
|          | 41925048 | 30-SEP-11 | Accrual-1000A-R | * | 2472.35 | 0.00 | 358.50 | 2830.85 |
|          | 41915826 | 30-SEP-11 | 5625A-PRM SUPPO |   | 98.40 | 0.00 | 14.31 | 112.71 |
|          | 41926399 | 30-SEP-11 | Accrual-1215A-A | * | 1483.41 | 0.00 | 215.08 | 1698.49 |
|          | 41914699 | 30-SEP-11 | 5066A-DIRECWAY |   | 160.00 | 16.00 | 25.53 | 201.53 |
|          |          |           | Sub Total |   | 5363.16 | 31.00 | 699.55 | 6093.71 |
| OCT-2011 | 41963136 | 31-OCT-11 | Accrual-1000A-R | * | 2920.30 | 0.00 | 378.14 | 3298.44 |
|          | 41964263 | 31-OCT-11 | Accrual-1215A-A | * | 1752.18 | 0.00 | 226.91 | 1979.09 |
|          | 41937846 | 31-OCT-11 | 5066A-DIRECWAY |   | 160.00 | 16.00 | 22.80 | 198.80 |

Page 9 of 12

Report Date : 04-SEP-12

ITEMIZED STATEMENT
---------------------

Customer No :  08164-86021-04-SUP
Address    :   624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:    04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | 41937875 | 31-OCT-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 12.78 | 111.18 |
| | | | | Sub Total | 4930.88 | 16.00 | 640.63 | 5587.51 |
| NOV-2011 | 41971030 | 30-NOV-11 | 5066A-DIRECWAY | | 160.00 | 16.00 | 20.16 | 196.16 |
| | 41972473 | 30-NOV-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 11.30 | 109.70 |
| | | | | Sub Total | 258.40 | 16.00 | 31.46 | 305.86 |
| DEC-2011 | 42009856 | 31-DEC-11 | 5066A-DIRECWAY | | 160.00 | 16.00 | 17.43 | 193.43 |
| | 42008203 | 31-DEC-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 9.77 | 108.17 |
| | 42025138 | 31-DEC-11 | Accrual-1000A-R | * | 2341.10 | 0.00 | 231.79 | 2572.89 |
| | 42025595 | 31-DEC-11 | Accrual-1215A-A | * | 1404.66 | 0.00 | 139.06 | 1543.72 |
| | | | | Sub Total | 4004.16 | 16.00 | 398.05 | 4418.21 |
| JAN-2012 | 42039410 | 31-JAN-12 | 5066A-DIRECWAY | | 160.00 | 16.00 | 14.70 | 190.70 |
| | 42039442 | 31-JAN-12 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 8.24 | 106.64 |
| | 42054010 | 31-JAN-12 | Accrual-1215A-A | * | 1465.62 | 0.00 | 122.38 | 1588.00 |
| | 42053098 | 31-JAN-12 | Accrual-1000A-R | * | 2442.70 | 0.00 | 203.96 | 2646.66 |
| | | | | Sub Total | 4166.72 | 16.00 | 349.28 | 4532.00 |
| FEB-2012 | 42085390 | 29-FEB-12 | Accrual-1215A-A | * | 1935.36 | 0.00 | 133.54 | 2068.90 |
| | 42086912 | 29-FEB-12 | Accrual-1000A-R | * | 3225.60 | 0.00 | 222.56 | 3448.16 |
| | 42069407 | 29-FEB-12 | 5066A-DIRECWAY | | 160.00 | 16.00 | 12.15 | 188.15 |
| | 42071961 | 29-FEB-12 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 6.81 | 105.21 |

Report Date : 04-SEP-12

ITEMIZED STATEMENT
------------------

Customer No :  08164-86021-04-SUP
Address :      624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date:    04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| | | | Sub Total | | 5419.36 | 16.00 | 375.06 | 5810.42 |
| MAR-2012 | 30672920 | 15-MAR-12 | GLOBAL CONFEREN | | 100.00 | 0.00 | 6.10 | 106.10 |
| | 42118709 | 31-MAR-12 | Accrual-1000A-R | * | 2340.65 | 0.00 | 125.22 | 2465.87 |
| | 42099205 | 31-MAR-12 | 5066A-DIRECWAY | | 160.00 | 16.00 | 9.42 | 185.42 |
| | 42119274 | 31-MAR-12 | Accrual-1215A-A | * | 1404.39 | 0.00 | 75.14 | 1479.53 |
| | 42099848 | 31-MAR-12 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 5.28 | 103.68 |
| | | | Sub Total | | 4103.44 | 16.00 | 221.16 | 4340.60 |
| APR-2012 | 42127552 | 30-APR-12 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 3.80 | 102.20 |
| | 42128082 | 30-APR-12 | 5066A-DIRECWAY | | 160.00 | 16.00 | 6.78 | 182.78 |
| | 42144194 | 30-APR-12 | Accrual-1215A-A | * | 1397.04 | 0.00 | 53.79 | 1450.83 |
| | 42144525 | 30-APR-12 | Accrual-1000A-R | * | 2328.40 | 0.00 | 89.65 | 2418.05 |
| | | | Sub Total | | 3983.84 | 16.00 | 154.02 | 4153.86 |
| MAY-2012 | 42158169 | 31-MAY-12 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 2.27 | 100.67 |
| | 42180894 | 31-MAY-12 | Accrual-1000A-R | * | 2543.35 | 0.00 | 58.50 | 2601.85 |
| | 42182110 | 31-MAY-12 | Accrual-1215A-A | * | 1526.01 | 0.00 | 35.10 | 1561.11 |
| | 42159280 | 31-MAY-12 | 5066A-DIRECWAY | | 160.00 | 16.00 | 4.05 | 180.05 |
| | | | Sub Total | | 4327.76 | 16.00 | 99.92 | 4443.68 |
| JUN-2012 | 42210020 | 30-JUN-12 | Accrual-1215A-A | | 1683.15 | 0.00 | 13.47 | 1696.62 |
| | 42209341 | 30-JUN-12 | Accrual-1000A-R | * | 2805.25 | 0.00 | 22.44 | 2827.69 |
| | 42192957 | 30-JUN-12 | 5066A-DIRECWAY | | 160.00 | 16.00 | 1.41 | 177.41 |
| | 42192145 | 30-JUN-12 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 0.79 | 99.19 |

Page 11 of 12

Report Date : 04-SEP-12

ITEMIZED STATEMENT
-----------------------

Customer No : 08164-86021-04-SUP
Address : 624 DECATUR HWY.,BIRMINGHAM,AL,35068-2809,US
As of Date: 04-SEP-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | Sub Total | | 4746.80 | 16.00 | 38.11 | 4800.91 |
| JUL-2012 | 42226787 | 30-JUL-12 | 5066A-DIRECWAY | | 160.00 | 16.00 | 0.00 | 176.00 |
| | 42226863 | 30-JUL-12 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 0.00 | 98.40 |
| | 42243454 | 31-JUL-12 | Accrual-1000A-R | * | 3188.75 | 0.00 | 0.00 | 3188.75 |
| | 42244586 | 31-JUL-12 | Accrual-1215A-A | * | 1913.25 | 0.00 | 0.00 | 1913.25 |
| | | | Sub Total | | 5360.40 | 16.00 | 0.00 | 5376.40 |
| AUG-2012 | 42273625 | 31-AUG-12 | Accrual-1215A-A | * | 1868.70 | 0.00 | 0.00 | 1868.70 |
| | 42273026 | 31-AUG-12 | Accrual-1000A-R | * | 3114.50 | 0.00 | 0.00 | 3114.50 |
| | 42253659 | 31-AUG-12 | 5066A-DIRECWAY | | 160.00 | 16.00 | 0.00 | 176.00 |
| | 42254211 | 31-AUG-12 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 0.00 | 98.40 |
| | | | Sub Total | | 5241.60 | 16.00 | 0.00 | 5257.60 |
| | | | Grand Total | | 123559.14 | 536.74 | 27656.63 | 151752.51 |

Requested By: Brenda Melendez

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

******* END OF REPORT *******

Page 12 of 12

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 04 Sep 2012          **Tracking Number:**      1Z22445X0295927120

### 1  Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Deepam, Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Paresh Patel | Brenda Melendez | Brenda Melendez |
| 1013 W. Franklin Street | 22 Sylvan Way | 22 Sylvan Way |
| QUINCY FL 323512251 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| Residential | Telephone:9737538950 | Telephone:9737538950 |

### 2  Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

### 3  UPS Shipping Service and Shipping Options

| | |
|---|---|
| Service: | UPS 2nd Day Air |
| Guaranteed By: | End of Day Thursday, Sep 6, 2012 |
| Shipping Fees Subtotal: | **22.19 USD** |
|    Transportation | 13.65 USD |
|    Fuel Surcharge | 2.29 USD |
|    Residential Surcharge | 3.00 USD |
|    Delivery Area Surcharge- Extended | |
|      Package 1 | 3.25 USD |

### 4  Payment Information

Bill Shipping Charges to:                     Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| **Total Charged:** | **22.19 USD** |
| **Negotiated Total:** | **11.13 USD** |

**Note:** Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 04 Sep 2012                **Tracking Number:**        1Z22445X0295348738

### 1 Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| General Electric Capital Corp. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| 635 Maryville Centre Drive | Brenda Melendez | Brenda Melendez |
| Suite 120 | 22 Sylvan Way | 22 Sylvan Way |
| SAINT LOUIS MO 631410007 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| | Telephone:9737538950 | Telephone:9737538950 |

### 2 Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

### 3 UPS Shipping Service and Shipping Options

| | |
|---|---|
| Service: | UPS 2nd Day Air |
| Guaranteed By: | End of Day Thursday, Sep 6, 2012 |
| Shipping Fees Subtotal: | 15.22 USD |
| Transportation | 13.65 USD |
| Fuel Surcharge | 1.57 USD |

### 4 Payment Information

Bill Shipping Charges to:                   Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| Total Charged: | 15.22 USD |
| Negotiated Total: | 5.65 USD |

**Note:** Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT F



October 2, 2014

**VIA CERTIFIED AND REGULAR MAIL**

Deepam, Inc.
ATTN: Paresh Patel
1013 W. Franklin Street
Quincy, Florida 82351

Paresh Patel
Deepam, Inc.
624 Decatur Highway
Fultondate, Alabama 35068

**Re:** **Demand to Cease and Desist Ongoing Infringement of Super 8 Worldwide, Inc.'s Trade Name and Service Marks at Facility located at 624 Decatur Highway, Fultondale, Alabama 35068, Former Super 8 Site No. 08164-86021-04**

Dear Mr. Patel:

We represent Super 8 Worldwide, Inc., formerly known as Super 8 Motels, Inc. ("SWI"), relative to issues relating to the guest lodging facility located at 624 Decatur Highway, Fultondale, Alabama 35068 (the "Facility") operating as a Super 8®. We write to demand that you cease and desist from using the Super 8® trade name, trademarks or service marks (collectively, the "Super 8® Marks"), and/or names and marks that are confusingly similar to the Super 8® Marks.

The Franchise Agreemen t between Deepam, Inc. ("Deepam") and SWI was terminated effective June 29, 2012. Thus, the Facility is no longer authorized to operate as a Super 8®. Pursuant to the Franchise Agreement, the Facility was required to immediately cease using all of the Super 8® Marks. Since the termination of the Franchise Agreement, the Facility has used the Super 8® Marks without authorization to rent rooms through, among other things, failure to remove the SWI signage and continuing to utilize the Super 8® Marks throughout the Facility. Specifically, by way of example and not limitation, signage bearing the Super 8® Marks is located at the

E-mail: Bryan.Couch@leclairryan.com

1037 Raymond Boulevard, Sixteenth Floor
Newark, New Jersey 07102
Phone: 973.491.3600 \ Fax: 973.491.3555

CALIFORNIA \ COLORADO \ CONNECTICUT \ MARYLAND \ MASSACHUSETTS \ MICHIGAN \ NEW JERSEY \ NEW YORK \ PENNSYLVANIA \ VIRGINIA \ WASHINGTON, D.C.

ATTORNEYS AT LAW \ WWW.LECLAIRRYAN.COM

Deepam, Inc.
Paresh Patel
October 2, 2014
Page 2

Facility, on nearby highways, and in the Facility's public areas, all within view of the traveling public.

As you know, SWI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services. SWI owns and has the exclusive right to license the use of the Super 8® Marks, as well as the distinctive Super 8® System, which provides hotel services to the public under the Super 8® name and certain services to its franchisees, including a centralized reservation system, advertising, publicity, and training services. SWI or its predecessors have continuously used each of the Super 8® Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

SWI prides itself on the quality of its services, and its reputation for quality, and the very substantial good will that has become attributable to it. SWI has spent substantial sums in development, and promotion of the good will associated with the Super 8® Marks and views them as substantial proprietary assets. The value of SWI's good will exceeds hundreds of millions of dollars.

The Facility's continued use of the Super 8® Marks constitutes an infringement of SWI's rights. This infringement is: 1) causing confusion among the public as to the affiliation of the Facility with the Super 8® System; and 2) damaging contractual relations between SWI and its legitimate franchisees. This has caused dilution and disparagement of the distinctive quality of the Super 8® Marks, and lessened the capacity of the Super 8® Marks to identify and distinguish the goods and services of SWI, all in violation of Section 43(c) of the Lanham Act.

Please be advised that if the Facility does not cease and desist from (1) using all Super 8® Marks; (2) displaying signage confusingly similar to the Super 8® Marks; and (3) otherwise identifying the Facility as a Super 8® by the close of business on Monday, October 13, 2014, SWI will immediately move for injunctive relief and seek to recover damages which, under the Lanham Act, may include an award of treble damages and attorneys' fees. See 15 U.S.C. § 1114, et seq.

Finally, Deepam has also failed to satisfy its financial obligations to SWI. Outstanding Recurring Fees, which now total $103,770.31, remain due and owing under the Franchise Agreement. Deepam is responsible for the payment of the past due amounts. Jagdish Patel, Tejash Patel and Mina Patel are also responsible for payment of these amounts as personal guarantors of Deepam's obligations under the Franchise Agreement.

Deepam, Inc.
Paresh Patel
October 2, 2014
Page 3


We are hopeful that we can reach an amicable resolution to the current problem. However, while SWI generally is desirous of avoiding litigation, it will vigorously enforce its proprietary rights where it believes that infringement is occurring and that litigation cannot otherwise be avoided.  **This letter will be our sole attempt to resolve this matter prior to the institution of legal proceedings seeking all available relief on behalf of our client.**

The foregoing is not intended, nor shall it be construed, as a complete recitation of the facts and events concerning the above-referenced matter or the law or claims of SWI in the event filings with respect thereto, nor shall it be construed as a complete recitation of any of your rights, claims, damages or remedies, legal or equitable. Nothing hereinabove stated or omitted shall be deemed a waiver or limitation of any right, remedy, claim, or cause of action of any kind whatsoever, all of which are hereby expressly reserved.  This letter is written without prejudice to any claims which SWI may have against you and/or related entities, including but not limited to injunctive relief and money damages, should action against you prove necessary.

Please do not hesitate to contact me if you have any questions about this matter.


Very truly yours,


BRYAN P. COUCH


BPC:vs

cc:    Jagdish Patel
        Mina Patel
        Tejash Patel